423 So.2d 824 (1982)
Jerry Randle SHEARER
v.
STATE of Mississippi.
No. 53494.
Supreme Court of Mississippi.
December 15, 1982.
Rehearing Denied January 5, 1983.
Morgan & Morgan, Clarence E. Morgan, III, Kosciusko, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, ROY NOBLE LEE and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Winston County[1] wherein Jerry Randle Shearer, appellant, was indicated, tried and convicted for the September 29, 1980, murder of Margie Bowie. The victim was slain in her own home in Kilmichael, Mississippi, upon returning home from work between *825 5:30 and 6:00 p.m. Apparently, a burglary was in progress when decedent entered her home and in an attempt to flee the scene without being discovered, the burglar struck Mrs. Bowie in the head with a hammer which resulted in her death. Upon conviction, Shearer, a neighbor of Mrs. Bowie, was sentenced to life imprisonment.
Mrs. Margie Bowie was employed as a bookkeeper at the Sunflower Food Store in Winona. On September 29, 1980, Mrs. Bowie, during her lunch hour, purchased two gifts from Simmons Jewelry Store, both of which were gift-wrapped and delivered to Mrs. Bowie in a white paper bag. She returned to work and remained there until she left for the evening at approximately 5:30 p.m.
After leaving work, Mrs. Bowie went to the drug store, accompanied by Ruth Thrasher, appellant's mother. Both women purchased a birthday card. Mrs. Bowie stopped back by Sunflower to retrieve her packages and then left for Kilmichael.
Mrs. Bowie arrived at her home in Kilmichael at approximately 6:00 p.m. When she entered her house, a neighbor noticed a light was turned on inside but was turned off shortly thereafter, in two or three minutes.
Mrs. Thrasher arrived at Mrs. Bowie's home approximately ten minutes later to pick up and deliver the birthday presents purchased earlier that day. She first tried to gain entrance through a side door; however, the door was locked and her knocks brought no response. She then proceeded to the back door where she heard Mrs. Bowie groaning; however, the back door was also locked. Mrs. Thrasher then went to the front door, which was also locked. However, when she looked through the window, she noticed the back door was open about three inches. When she returned to the back door, she found the same had been opened.
Having become fearful of the situation, Mrs. Thrasher called Mr. Applewhite who was sitting on his porch next door. He and Mrs. Thrasher then returned to Mrs. Bowie's residence, finding her lying in a pool of blood in a bedroom near the back door. Mrs. Thrasher tried to use the telephone to call for help, but the phone lines had been severed. The police and an ambulance were summoned from Mr. Applewhite's residence.
Dr. L.C. Henson arrived at Mrs. Bowie's residence around 6:15 p.m. His examination revealed she had been struck behind her right ear at least four times with some sort of blunt instrument. Dr. Henson asserted the wounds could have been produced by a hammer. A bloody hammer was found at the scene. A subsequent analysis of the blood and hair on the hammer revealed that the blood on the hammer was consistent with Mrs. Bowie's blood and the hair found thereon was similar to Mrs. Bowie's and could have had a common origin.
Mrs. Bowie was transported from the emergency room at Kilmichael Hospital to the Baptist Hospital in Jackson; however, she died before reaching Jackson. The cause of death was the lesion over the sagital sinus (large blood vessel directly under the site of the wound). Mrs. Bowie bled to death.
The decedent was described as being like a mother to appellant who had been friends with her children. However, appellant's fingerprints were found on several articles in decedent's home, including a paper sack (allegedly from Simmons' Jewelry), a receipt from Artman's Jewelry dated 7-14-80, a receipt from Dr. Marasako dated 5-29-79, a ticket stub dated April 26, 1980, and a receipt from Davidson Marble and Granite Works dated 3-27-80. No prints were found on the hammer.
Appellant also, while incarcerated, allegedly confessed to Barry James, a cellmate, that he killed Mrs. Bowie because she saw him before he could get out of her house. Appellant offered no evidence to rebut the evidence presented by the state.
The jury returned a verdict of guilty as charged and appellant was thereafter sentenced to life imprisonment.

*826 I. Did the trial court err in admitting appellant's trousers into evidence and in permitting Johnette Gothard to testify there was blood on the trousers?
On September 30, 1980, Ronnie White, a criminal investigator with the Mississippi Highway Patrol, and Bobby White, also with the Mississippi Highway Patrol, questioned appellant at his residence concerning his whereabouts on the previous day. Ronnie White asked appellant what he had been wearing on September 29, 1980, and also asked if he could see the same. Appellant retrieved the clothing, whereupon investigator White examined the trousers. White then told appellant he thought the trousers contained blood around the cuff. He voluntarily allowed the pants to be taken by the officers for analysis.
The pants were subsequently analyzed at the Mississippi Crime Lab. The spots believed to have been blood turned out not to be blood; however, a small trace of blood was found around one of the pockets. The quantity of blood discovered was of such an insignificant amount that further testing could not be conducted. The pants were admitted into evidence at trial even though the blood found thereon had not been classified as human blood or typed.
Appellant contends the pants should not have been admitted into evidence because they were irrelevant and highly prejudicial. He argues that admitting the evidence and allowing the state to prove the pants contained traces of blood with no proof that it was even human blood, was prejudicial and constitutes reversible error. The state contends the trousers were relevant to the issue of guilt.
A trial judge enjoys a considerable amount of discretion as to the relevancy and admissibility of evidence. Unless his judicial discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling. Page v. State, 295 So.2d 279 (Miss. 1974).
We have carefully reviewed the record and find there was no abuse of discretion by the trial judge in admitting appellant's trousers into evidence. However, the admission of this type of evidence in a different case may constitute reversible error.

II. Did the trial court err in admitting into evidence the photographs of the deceased?
Three pictures of decedent's wounds were introduced into evidence over appellant's objections. Appellant contends the gruesome nature of the pictures having no probative value as to his guilt or innocence, was reversible error. He argues that the pictures were not necessary to prove the corpus delicti and did not purport to depict a portrayal of the crime scene.[2] Appellant avers there was no issue raised as to the cause of death, the fact of death, the weapon causing death or the number and placement of the blows that killed her. Therefore, the pictures were introduced solely to inflame the jury and prejudice the appellant.
Prosecutors, in their often over-zealous efforts to obtain a criminal conviction, seek the introduction of inordinately gruesome photographs where the photographs have little, if any, probative value. Such overzealousness may in some instances, particularly in a weak case such as this one, often jeopardize a conviction where the photographs are not necessary to the state's case. Perhaps some consideration might be given to the use of such photographs where it is only necessary to establish the cruelty or atrociousness of the act committed such as in the sentencing phase of a capital murder trial.
In this state, the trial judge is granted much discretion to determine the admissibility of photographs. Briggins v. State, 416 So.2d 691 (Miss. 1982); Edwards v. State, 413 So.2d 1007 (Miss. 1982); King v. State, 408 So.2d 1375 (Miss. 1982); Sadler v. *827 State, 407 So.2d 95 (Miss. 1981); Tubbs v. State, 402 So.2d 830 (Miss. 1981); Steed v. State, 396 So.2d 625 (Miss. 1981); Cooley v. State, 391 So.2d 614 (Miss. 1980); and Bullock v. State, 391 So.2d 601 (Miss. 1980).
The mere fact that photographs of a victim are horrible and gruesome is not, in and of itself, reason why they should not be admissible. Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961). Photographs of the victim should ordinarily not be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and identity of the deceased have been well established. Williams v. State, 354 So.2d 266 (Miss. 1978). However, the admission of photographs alone which have no probative value does not generally constitute reversible error. Williams, supra, and Stevenson v. State, 325 So.2d 113 (Miss. 1975).
Although the photographs in the instant case were somewhat gruesome, we are not convinced that they were totally devoid of probative value. After a careful review of the record, we do not believe the trial judge abused his discretion in admitting into evidence the photographs depicting the wounds suffered by decedent.

III. Was the verdict of the jury against the overwhelming weight of the evidence?
Appellant contends the evidence presented by the state was insufficient to sustain his conviction. Appellant primarily contends that although his fingerprints were found on several small transportable items in decedent's house, none of his fingerprints were found on any immovable objects which would have conclusively established he had been present in decedent's home some time before the killing. Appellant also attacks the credibility of Barry James, asserting there was no reason advanced for his alleged confidence in James as well as the fact that James had dated appellant's wife prior to trial.
In Sadler v. State, 407 So.2d 95 (Miss. 1981), this Court stated:
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251].
The resolution of such conflicts as there were in the evidence in this case, was peculiarly for the jury. In Hankins v. State, 288 So.2d 866 (Miss. 1974), it was said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury. (159 Miss. at 566, 132 So. at 564).
We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the factfinding office of the jury. [288 So.2d at 868]. (407 So.2d at 97).
Appellant offered no explanation as to how his fingerprints might have come into contact with those articles found in decedent's house, nor did he deny making a confession to Barry James. The evidence was more than sufficient to sustain the jury's verdict.
Based on the foregoing, this case is affirmed.
AFFIRMED.
*828 PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
NOTES
[1] Upon motion of appellant, venue was changed from Montgomery County to Winston County.
[2] The pictures were taken after Mrs. Bowie's body was transported to Oliver's Funeral Home in Winona.