776 So.2d 704 (2000)
Pete J. DeSALVO, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00479-COA.
Court of Appeals of Mississippi.
August 1, 2000.
Rehearing Denied October 31, 2000.
Certiorari Denied February 1, 2001.
*706 George S. Shaddock, Pascagoula, Martin E. Regan, Attorneys For Appellant.
Office of the Attorney General by Scott Stuart, Attorneys For Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Peter J. DeSalvo, Jr. appeals from a George County Circuit Court's conviction on two counts of burglary wherein he received a sentence of seven years on each count to run consecutively. DeSalvo raises the following issues as error
I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING OFFICER LAMBERT, NOT QUALIFIED AS AN EXPERT, TO GIVE HIS OPINION AS TO THE APPELLANT'S GUILT.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING WITNESS PERALTA TO TESTIFY IN VIOLATION OF RULE 615 OF THE RULES OF EVIDENCE CONCERNING THE EXCLUSION OF *707 WITNESSES AND SEQUESTRATION OF WITNESSES.
III. WHETHER THE TRIAL COURT ERRED IN CONSIDERING DESALVO'S STATUS AS A POLICE OFFICER DETERMINATIVE IN IMPOSING THE MAXIMUM SENTENCE.
IV. WHETHER THE TRIAL COURT ERRED IN IMPOSING AN EXCESSIVE AND UNCONSTITUTIONAL SENTENCE.
V. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A MISTRIAL.
VI. WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR SUPPRESSION OF APPELLANT'S CONFESSION.
VII. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR SEQUESTRATION OF THE JURY IN ACCORDANCE WITH MISS. U. CRIM. R. CIR. CT. PRAC. RULE 5.07
VIII. WHETHER COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO STATES CROSS EXAMINATION OF REV. NANCE AS TO ADMISSIONS MADE BY APPELLANT SUBSEQUENT TO THE CRIME.
IX. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO STATE'S IMPROPER CROSS EXAMINATION OF DESALVO.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Peter J. DeSalvo, Jr. was indicted by the grand jury on twelve counts of burglary. The trial court granted a change of venue from George County to Hancock County, Mississippi. Two of the twelve counts were set to be tried together. The jury returned a guilty verdict on both counts, and the court sentenced DeSalvo to serve seven years on each count to run consecutively. DeSalvo, a former police officer for the City of Lucedale, appeals that decision to this court.
¶ 4. James H. Williamson testified that he saw a light in the rear of the Lucedale Appliance Store around 10:30 p.m. on December 31, 1997, so he telephoned the police station. Williamson also told the dispatcher that there was a police car, the defendant's vehicle, parked on the street but he did not see the officer. Officers Lambert and Walker, police officers with the Lucedale Police Department, were present at the police station when Williamson's call was received. They told the dispatcher they would check out the appliance store.
¶ 5. Officers Lambert and Walker testified that it only took them a few minutes to arrive at the appliance store. They testified that they noticed DeSalvo's police cruiser out front but did not see him. They stated that there was no visible damage to the front door but it was ajar. They also testified that when they walked inside the store they heard a noise in the back room, causing them to yell out, "Police, freeze." Officer Walker then yelled, "Come out with your hands up. Now." Officer Walker testified that DeSalvo came around a corner and asked if they had heard him call out. He then looked down at his radio and stated, "Oh, I was on the wrong channel." They both described DeSalvo as covered in dust and sweating. DeSalvo told them he noticed that the door was open, checked the place out, and determined that everything was all right. Officer Lambert stated that he found DeSalvo's explanation strange because the usual protocol when they do a building check is to call for assistance because it is dangerous to do it by yourself. While on the *708 stand Officer Lambert stated, over the defense's objection, "I suspected Pete DeSalvo as burglarizing the building." He also testified that he noticed a safe in the store but only saw the front and left side. He also smelled something burning and noticed dust swept into a small pile in the back room by the safe. At that time Officers Walker and Lambert received another call and left.
¶ 6. Officers Lambert and Walker also testified that DeSalvo called them back to the store stating that the store had been broken into; however, they did not return until after midnight. When the officers arrived back at Lucedale Appliance, they noticed that DeSalvo's uniform was no longer covered in dust and he was no longer wearing his gloves. They also found that the cash register had been pried open and the steel safe had been burned into, presumably with two acetylene oxygen welding torches with brazing tips used to repair various things in the store. Officer Walker related that as he was checking the perimeter he noticed a pair of gloves covered in a white dusty substance in the front seat of DeSalvo's vehicle and he took a picture of them.
¶ 7. Officer Lambert further testified that when he returned to the police department he contacted the mayor and the chief of police to arrange a meeting that night. Over DeSalvo's objection Officer Lambert related that he told the mayor, "I believe we had a dirty cop." DeSalvo moved for a mistrial, which the trial court denied but did instruct Lambert not to testify as to what anybody else said.
¶ 8. Mr. James Davis, the owner of the store, testified that he presumed his welding torches had been used to enter the safe because one tank was found empty while the other one was very low, even though his son had exchanged the tanks for full ones a day or two before. Davis testified that a couple hundred dollars used to make change was missing from the safe.
¶ 9. Sheriff Miller testified that when he was informed that DeSalvo was a suspect in the Lucedale Appliance burglary he met with Officer Lambert, and Officers Keel, Hillman, Mixon, Mitchell and Maples from the sheriff's department to set up a sting operation. He also testified that he requested federal agents and the highway patrol to meet with him at the George County High School's football field wherein he assigned teams to various stores in the city. Sheriff Miller and Officer Hillman were stationed in the George County Courthouse, which is across the street from the Tax Assessor's Office, with a clear view of the funeral home, Justice Court and the Tax Assessor's Office. Sheriff Miller testified that after he had been in position for about two and a half hours he saw DeSalvo at the front of the Tax Assessor's Office and go behind the George County Funeral home. Miller stated that he and Officer Hillman saw a flash of light in the Tax Assessor's front window so they ran down and looked in the window. Officer Hillman then testified that he saw DeSalvo in the Tax Assessor's Office with a screwdriver, prying on a closet door.
¶ 10. Tony Keel, an investigator with the George County Sheriff's Department, testified that he spoke with Sheriff Miller over the radio and was told to go to the rear of the Tax Assessor's Office. He stated that he drew his weapon, sent for backup and told DeSalvo to put his hands up while other officers entered the Tax Assessor's Office from the back door, arrested and handcuffed DeSalvo. Keel testified that he searched DeSalvo and found $476 dollars in his wallet, a pair of gloves, a screwdriver, a knife, a pair of pliers, a pocket knife and another knife, all of which were admitted into evidence. A picture of DeSalvo lying on the floor, handcuffed, with all the items found on his person was taken and admitted into evidence. Officer Hillman testified that DeSalvo was read his Miranda rights at the Tax Assessor's Office and again at the George County Sheriff's Office, where DeSalvo ultimately gave a tape-recorded statement. In the *709 statement he admitted to burglarizing Lucedale Appliance and the Tax Assessor's Office.
¶ 11. DeSalvo testified that he had been employed as a Lucedale police officer for nine years and had been doing contracting work on the side. He testified that although he had done lots of remodeling and contracting that he had not had any experience with welding. DeSalvo stated that he went to work on December 31, 1997, staying late because the department was short-handed. He explained that he went to Lucedale Appliance that evening around 10:10 to check out the building and radioed to dispatch but did not get a response. He stated that he noticed the door was open and went in to check things out and had been there maybe three to four minutes when Lambert and Walker arrived. He testified that he did not notice that the place had been burglarized until the owner and several other people showed up and looked around and noticed the safe and the cash register had been broken into. He further testified that the mayor requested that he work the next day even though it was his day off.
¶ 12. DeSalvo testified that on January 1, 1998, in the evening hours he went to the back door of the Tax Assessor's Office to check the building when he noticed the back door was open. He further stated that he had only been in the building two to three minutes when he heard the sheriff beating on the window and telling him to come out. He felt he was being set up. He admitted that several of the items allegedly taken from his person were his, but the large knife was not his. He further testified that his confession was inaccurate and coerced. He claimed that the officers threatened his children and his wife so he said what the officers told him to say. He maintains that he requested a lawyer but was not given one until his wife arranged for one the next day. He explained that he deliberately made false statements in the confession so that he could later disprove them. DeSalvo also stated that the money found in his wallet was from a contracting job he had just completed. DeSalvo alleged that the whole thing was a conspiracy and a set up.
¶ 13. Reverend Gary Nance testified as to DeSalvo's character. He stated that DeSalvo was truthful and trustworthy. The State questioned Reverend Nance regarding DeSalvo's confession, which the defense objected to.
¶ 14. The State called Jerry Peralta, an FBI agent, as a rebuttal witness. Prior to calling Peralta, the State told the court that the witness had inadvertently been in the courtroom for part of DeSalvo's testimony. The court questioned Peralta on what he had heard but allowed him to testify. At trial the defense only objected to Peralta's testifying as to a discovery violation.
¶ 15. The jury returned a guilty verdict and the judge sentenced DeSalvo to the maximum sentence of seven years on each count to run consecutively.

ANALYSIS

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING OFFICER LAMBERT, NOT QUALIFIED AS AN EXPERT, TO GIVE HIS OPINION AS TO THE APPELLANT'S GUILT.
¶ 16. DeSalvo argues that the trial court erred by admitting Officer Lambert's testimony about his opinion that DeSalvo had burglarized the store. Defense counsel objected to the statement at trial arguing the statement did not meet the requirements for lay opinions under M.R.E. Rule 701 and that Officer Lambert had not been determined to be an expert as required for expert opinions under M.R.E. Rule 702. DeSalvo also maintains that the statement was not permitted because it invaded the province of the jury.
¶ 17. The State, however, maintains that Officer Lambert's statement met both *710 prongs of M.R.E. Rule 701 and was properly allowed. The State argues that the statement, as required by Rule 701, was based upon Officer Lambert's personal observations and was helpful to the jury on the determination of a fact in issue.
¶ 18. We view the statement as made in the context of his thought process during the investigation to explain why he acted and proceeded in the manner that he did. In Swindle v. State, 502 So.2d 652, 657-58 (Miss.1987), the court held that an officer's testimony about a tip received from an informant as to the whereabouts of a defendant was not offered for its truth and was "admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time." Id. We hold that this is the situation in the case at bar. We also note that, assuming it was error, we find it to be a harmless one.

II. WHETHER THE TRIAL COURT ERRED IN ALLOWING WITNESS PERALTA TO TESTIFY IN VIOLATION OF RULE 615 OF THE RULES OF EVIDENCE CONCERNING THE EXCLUSION OF WITNESSES AND SEQUESTRATION OF WITNESSES.
¶ 19. DeSalvo argues that the trial judge erred when he admitted FBI Agent Peralta's testimony in rebuttal. He maintains that allowing Agent Peralta to testify violated M.R.E. Rule 615, the sequestration of witnesses rule.
¶ 20. The State argues that this issue is procedurally barred because DeSalvo only objected at trial on the basis of a discovery violation. DeSalvo did not object in regards to the sequestration rule at trial. It has been made eminently clear that trial counsel may not silently observe as objectionable evidence is admitted without voicing disapproval and then raise the issue for the first time on appeal. Cole v. State, 525 So.2d 365, 369 (Miss.1987). If no contemporaneous objection is made, the error, if any, is waived. Id. The record reflects that DeSalvo failed to make a contemporaneous objection on the grounds raised here on appeal. Furthermore, an objection on one specific ground waives all other grounds not specified. Carter v. State, 722 So.2d 1258, 1261 (Miss.1998). This issue is procedurally barred.
III. WHETHER THE TRIAL COURT ERRED IN CONSIDERING DESALVO'S STATUS AS A POLICE OFFICER DETERMINATIVE IN IMPOSING THE MAXIMUM SENTENCE.
IV. WHETHER THE TRIAL COURT ERRED IN IMPOSING AN EXCESSIVE AND UNCONSTITUTIONAL SENTENCE.
¶ 21. Issues three and four both involve sentencing and we address them together. DeSalvo argues that the trial judge violated the equal protection clause of the Fifth and Fourteenth Amendments by sentencing him to the maximum sentence when he was a first time offender. He maintains that he was not treated as others in his situation but rather that he was singled out for sentence enhancement because he was a police officer. DeSalvo also maintains that the sentence violates the Eighth Amendment prohibiting cruel and unusual punishment because his sentence was grossly disproportionate to others in similar situations.
¶ 22. As a general rule, a sentence will not be disturbed on appeal so long as it does not exceed the maximum term allowed by statute. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992); Fleming v. State, 604 So.2d 280, 302 (Miss.1992); Reed v. State, 536 So.2d 1336, 1339 (Miss. 1988); Corley v. State, 536 So.2d 1314, 1319 (Miss.1988). So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion and we will not disturb it. Wallace, 607 So.2d at 1188.
¶ 23. Furthermore, in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, *711 115 L.Ed.2d 836 (1991), the United States Supreme Court overruled the general proposition announced in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), that all sentences are subject to proportionality analysis; an inference of gross disproportionality must appear from a threshold comparison of the crime and sentence in order for Solem to apply. Harmelin, 501 U.S. at 1019. In Hoops v. State, 681 So.2d 521 (Miss.1996), our supreme court acknowledged the Harmelin limitation on Solem. As to DeSalvo's sentence, we find that a threshold comparison of the crime to which DeSalvo was found guilty to the seven year sentence imposed by the trial court does not give rise to an inference of gross disproportionality. Thus, a proportionality analysis under Solem is not necessary. Accordingly, we find the trial court was not in error in its sentencing of DeSalvo.

V. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A MISTRIAL.
¶ 24. DeSalvo maintains that the trial court erred by not granting a mistrial due to hearsay statements made by Officer Lambert. During his testimony Officer Lambert recounted the meeting which initiated the sting operation, stating that he told the mayor, "We have a dirty cop." DeSalvo's trial counsel objected to the statement and moved for a mistrial. The trial judge denied the motion for a mistrial and instructed the witness not to relay any hearsay statements. DeSalvo maintains that this statement was highly prejudicial and created irreparable harm to DeSalvo's defense.
¶ 25. The trial judge is in the best position to determine if there has been any prejudicial effect from the objectionable remark. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990). The judge is given broad discretion to determine whether the remark was so prejudicial that a mistrial should be declared. Id. The judge here found that the statement, if prejudicial at all, was certainly not to the extent that a mistrial should have been granted. The Uniform Rules of Circuit and County Court Practice, Rule 3.12 allows the judge to declare a mistrial only when the harm done would render the defendant without hope of receiving a fair trial. Id. at 1178.
¶ 26. Next, we look at the statement in order to determine if it was inadmissible hearsay. As we explained above, certain statements may be made to show why an officer acted as he did. Swindle, 502 So.2d at 657-58. Likewise, in the case sub judice, the officer's testimony as to the statements made to the mayor and chief of police was offered to show why they organized a "sting operation." Clearly, the testimony was admitted not for the truth of the matter asserted but as the basis for later actions and thus not hearsay. Parker v. State, 724 So.2d 482, 484 (Miss.Ct. App.1998).

VI-IX. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 27. DeSalvo argues numerous instances of actions or inactions on the part of his trial counsel which he asserts amount to ineffective assistance of counsel. Before we address each issue on its merits individually, we are compelled to discuss the stringent standard and burden in proving such claims.
¶ 28. Claims of ineffective assistance of counsel are reviewed under the two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss. 1984). For DeSalvo to succeed on his ineffective assistance of counsel claim, he must meet both prongs successfully. DeSalvo must show: 1) that his trial counsel's performance was deficient, and 2) that trial counsel's deficient performance prejudiced his defense. Stringer, 454 So.2d at 476. DeSalvo bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). There is a strong but rebuttable *712 presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott v. State, 742 So.2d 1190 (Miss.Ct.App.1999); Cole v. State, 666 So.2d 767, 777 (Miss.1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). With this in mind, we now turn to DeSalvo's allegations of ineffectiveness.

VI. WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR SUPPRESSION OF APPELLANT'S CONFESSION.
¶ 29. DeSalvo claims that his trial counsel should have moved to suppress his confession and that the failure to do so constituted ineffective assistance of counsel. He argues that because he was tired from working overtime, had been in custody for more than three hours prior to his confession and had requested a lawyer his confession should have been suppressed. DeSalvo points out that he is a police officer and aware of his rights and would not have made a statement without being coerced. He further maintains that a suppression hearing would have determined facts related to his admissions that would have cast doubt on the voluntariness of his confession.
¶ 30. The State argues that in the unlikely event that the confession would have been suppressed the outcome would still have been the same since DeSalvo was discovered in the act of burglarizing the Tax Assessor's Office. The State urges that the second prong of Strickland has not been met.
¶ 31. The first step in the analysis under Strickland is consideration of whether DeSalvo's trial counsel's failure to file a motion to suppress DeSalvo's confession was deficient conduct. We have no record as to the trial counsel's thought process. On the other hand, it does not appear that counsel should be required to file frivolous motions. Looking at the record it is difficult to see how the trial court, given the proper standard of review, would have excluded the statements. DeSalvo was a police officer and, admittedly, aware of his rights. Based on the record, there is little to support the notion that DeSalvo's trial counsel would have been successful in suppressing DeSalvo's statements.
¶ 32. The second prong of Strickland is whether the verdict would have been different had the confession in question been excluded. The testimony of all the officers that caught DeSalvo in the Tax Assessor's Office still stands to support the conviction. We hold that DeSalvo has failed to make the requisite showing of deficient conduct and prejudice required under Strickland.

VII. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR SEQUESTRATION OF THE JURY IN ACCORDANCE WITH MISS. U. CRIM. R. CIR. CT. PRAC. RULE 5.07.
¶ 33. DeSalvo maintains that his trial counsel was ineffective for failing to move for sequestration of the jury. DeSalvo argues that the publicity was widespread and even with the change of venue the jury was exposed to media of DeSalvo's arrest and trial.
¶ 34. The State argues that DeSalvo did not demonstrate how he was prejudiced by the failure to sequester the jury. The State also points out that DeSalvo did not *713 show that the result would have been different if Shaddock had moved to sequester the jury.
¶ 35. In reviewing the record we must note that the judge admonished the jury every day not to watch the news or read about the case in the paper. The jury is presumed to follow the instructions of the trial judge. Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985) (citing Payne v. State, 462 So.2d 902, 904 (Miss.1984); Carter v. State, 450 So.2d 67, 69 (Miss. 1984)); Chase v. State, 645 So.2d 829, 853 (Miss.1994). We must assume that the jury followed the instructions of the court and as DeSalvo has not demonstrated anything to the contrary, we do not find any indication that the outcome of the trial would have been different. Furthermore, a change of venue, granted in this case, is one of the ways for vindicating the right of an accused to a fair trial. Fisher v. State, 481 So.2d 203, 216 (Miss.1985). We hold this issue to be without merit.

VIII. WHETHER COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO STATES CROSS EXAMINATION OF REV. NANCE AS TO ADMISSIONS MADE BY APPELLANT SUBSEQUENT TO THE CRIME.
¶ 36. DeSalvo claims that his trial counsel should have objected to the cross-examination of Reverend Nance, his character witness. Specifically, DeSalvo maintains that the question asking Reverend Nance whether he was aware that DeSalvo confessed to the crimes was improper. He alleges that, according to Craft v. State, 254 Miss. 413, 181 So.2d 140 (1965), failing to object to questions regarding misconduct alleged to have been committed subsequent to the date of the crime for which he is being tried was error.
¶ 37. Once again we are asked to make several assumptions. We have to assume trial counsel's failure to object constituted ineffective assistance and that as a result thereof there is a reasonable probability that but for such deficiency the result, the verdict, would have been different. We decline to so speculate.

IX. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO STATE'S IMPROPER CROSS EXAMINATION OF DESALVO.
¶ 38. Finally, DeSalvo contends that his trial counsel was ineffective for failing to object to improper cross-examination of DeSalvo at trial. DeSalvo alleges that the State's theory was that DeSalvo committed a rash of burglaries in an attempt to unseat the chief of police so that he might move into that position. DeSalvo alleges that since no witnesses or other evidence supported or established this theory it was improper for the State to proceed in questioning DeSalvo regarding a "rash of burglaries." DeSalvo further alleges that other remarks made by the State should have been objected to, such as the following: "You're a good liar, Mr. DeSalvo," "Well, was she [the dispatcher] part of the conspiracy too?" "How long were you in the marines?" "I'll bet you about had a heart attack when you found out they were outside, didn't you?" and "You're a brave man. Did you turn any lights on?"
¶ 39. We need not address each instance where trial counsel did not object to a question or comment made by the State. Our supreme court "recognizes a strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. More specifically, there is a presumption that counsel's decisions are *714 strategic in nature, rather than negligent. See Handley v. State, 574 So.2d 671, 684 (Miss.1990); Leatherwood v. State, 473 So.2d 964, 968-69 (Miss.1985). Our supreme court explained the difficulty in considering strategy in Stringer when it stated:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
Stringer, 454 So.2d at 477; Strickland, 466 U.S. at 689. In short, defense counsel is presumed competent. Johnson v. State, 476 So.2d 1195, 1204 (Miss.1985); Washington v. State, 620 So.2d 966 (Miss.1993). ¶ 40.
The presumption that trial counsel acted competently and the difficulty in second-guessing trial strategy, taken in conjunction with the strict standard required to prove ineffective assistance of counsel, constrains us. Trial counsel has wide latitude. DeSalvo has failed to show a reasonable probability of a different outcome.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION OF COUNT I OF BURGLARY AND SENTENCE OF SEVEN YEARS (7) AND COUNT X OF BURGLARY AND SENTENCE OF SEVEN YEARS (7) TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.