[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1264 
¶ 1. Tim Walker sued Richard Benz, Jr. on a tort claim for assault. A jury sitting before the Leflore County Circuit Court returned a verdict for Benz and found that Benz was not liable to Walker for assault. Aggrieved, Walker appeals and raises four issues, listed verbatim:
 I. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
 II. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING EXTRINSIC AND COLLATERAL IMPEACHMENT EVIDENCE TO BE INTRODUCED AT TRIAL.
 III. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING HIGHLY PREJUDICIAL IMPEACHMENT EVIDENCE *Page 1265 
TO BE INTRODUCED AT TRIAL.
 IV. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING CHARACTER EVIDENCE PERTAINING TO THE APPELLANT TO BE INTRODUCED AT TRIAL.
Finding that the circuit court erred when it admitted improper evidence, we reverse the jury's verdict and remand this matter to the Leflore County Circuit Court for a new trial.
 FACTS ¶ 2. Tim Walker and his girlfriend, Brenda Ellis, hired attorney Richard Benz, Jr., of Greenwood, Mississippi to represent them incident to a car wreck. Benz testified that he discovered a lien against Walker for child support arrearages. Based on the trial testimony, Benz told Walker and Ellis that it would be unlikely that they would collect on their car wreck claim because the Mississippi Department of Human Services would apply a lien against any recovery in the car wreck case. Dissatisfied, Walker and Ellis terminated Benz and hired another attorney.
 ¶ 3. On January 24, 2002, Walker went to Benz's office to pick up his file. What started as a conversation ended up in violence. It is undisputed that Benz beat up Walker. Benz and Walker paint two distinctly different pictures of the events that led to Walker's beating. In both versions, Walker stood at the open door to Benz's office, while Benz sat at his desk. In both versions, Benz and Walker engaged in a conversation. Both Walker and Benz testified that Benz told Walker he no longer represented him. However, Walker and Benz disputed Walker's response.
 ¶ 4. Walker testified that he simply told Benz, "I understand that . . . [m]aybe its for the best. I appreciate what you did for me." According to Walker, he left Benz's office after he thanked Benz. However, Benz testified that Walker was not quite so polite. Benz testified that Walker did not thank him and leave. According to Benz, Walker insulted him when he said, "Good, I'm glad you don't represent me anymore, `cause you're a crook."
 ¶ 5. Both Walker and Benz testified that Walker left Benz's law office immediately after the disputed exchange. Likewise, both Walker and Benz testified that, as Walker reached his truck, Benz caught up with him and beat him up. The two versions of the beating, however, are not exactly alike.
 ¶ 6. In Walker's version, Walker became aware of something behind him. Walker testified that Benz hit him in the head, his ribs, and his left elbow. Then Benz got him in a head lock and tripped him. At that point, Benz had Walker face down on the pavement. Walker testified that Benz sat on Walker's lower back, grabbed Walker's neck, and "snatch[ed] [Walker's] neck sideways." Walker claimed that Benz clawed his eyes and bashed his head into the concrete. Benz's legal secretary convinced Benz to stop and get up off of Walker, but before he stopped, Benz jumped and came down feet first onto Walker's lower back. Afterwards, Benz "got up, and then . . . turned around and walked into the office and left [Walker] behind [his] truck for dead."
 ¶ 7. Benz admitted that he attacked Walker and beat him up, but Benz tells a different story of the attack. According to Benz:
 I got out of my chair. I ran across my office. I threw open the door. Right when I got to him, [Walker] he turned around. I hit him with my shoulder on his right shoulder, knocked him into his *Page 1266 
truck. I then got him in a head lock and threw him on the ground. I beat his head into the concrete a couple times. I kneed him one time. And Bobbie Gail [Benz's legal secretary] came out there. I told him, I said, "You called me a crook." He said, "I won't do it no more." He was screaming, "I won't do it no more." And I got up.
 ¶ 8. On August 27, 2002, Tim Walker sued Richard Benz, Jr. and alleged that Benz assaulted him. Walker sought to recover damages for "physical and emotional pain and suffering, mental and emotional distress, past medical expenses, future medical expenses, lost wages, permanent injuries and/or disability and loss of wage earning capacity." Accordingly, Walker requested actual damages of one million dollars and punitive damages of one million dollars.
 ¶ 9. As mentioned, the jury returned a verdict for Benz. Walker appeals. We turn to his claims.
 ANALYSIS I. WHETHER THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT.
 ¶ 10. In his first issue, Walker claims that the circuit court erred when it overruled his motion for partial summary judgment. This Court conducts a de novo review of a trial court's decision to grant or overrule a motion for summary judgment. Dailey v.Methodist Medical Center, 790 So.2d 903 (¶ 3) (Miss.Ct.App. 2001). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact." M.R.C.P. 56(c). When considering a motion for summary judgment, a trial court must view the sources listed above in the light most favorable to the non-moving party. Brownv. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss. 1983). Here, the circuit court overruled Walker's motion for partial summary judgment, so we must consider the evidence in the light most favorable to Benz.
 ¶ 11. Though Walker frames the issue as a summary judgment question, he does not argue that summary judgment is proper due to a lack of genuine issues of material fact. Rather, Walker argues that the circuit court erred when it failed to apply the doctrine of collateral estoppel.
 ¶ 12. "[C]ollateral estoppel . . . applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated." Norman v. Bucklew, 684 So.2d 1246,1253 (Miss. 1996). When collateral estoppel operates, the parties are precluded from "relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." Id. at 1254.
 ¶ 13. Here, Walker argues that the circuit court should have applied collateral estoppel to Benz's justice court conviction. In August of 2002, the Leflore County Justice Court found Benz guilty of simple assault of Walker. According to Walker, the circuit court should have applied collateral estoppel and granted partial summary judgment in his civil action. As such, the present question involves collateral estoppel, more than summary judgment. Without question, if collateral estoppel does not apply, then there can be no error in the circuit court's decision to overrule Walker's motion for partial summary judgment. *Page 1267 
 ¶ 14. In general, a pending appeal has no effect upon the preclusive effect of a judicial determination. Smith v. Malouf,597 So.2d 1299, 1302 (Miss. 1992). However, Smith also held that a final judgment remains final, despite the appeal unless
"what is called an appeal actually consists of a trial de novo."Id. (emphasis added). So, if an appeal results in a trial de novo, collateral estoppel does not apply. See Simpson v. City ofPickens, Miss., 887 F.Supp. 126, 129 (S.D.Miss. 1995).
 ¶ 15. In this instance, collateral estoppel would not apply to Benz's justice court conviction. Benz appealed his justice court conviction to the circuit court. "Appeals from justice court to circuit court are tried de novo." Meeks v. State,800 So.2d 1281 (¶ 13) (Miss.Ct.App. 2001). Additionally, Section 11-51-91 of the Mississippi Code (Rev. 2002) states that "[o]n appeal from a justice of the peace court to the circuit court the case shall be tried anew."
 ¶ 16. Since collateral estoppel does not apply where an appeal results in a trial de novo, and an appeal from justice court to a circuit court results in a trial de novo, then collateral estoppel does not apply to the present action. Accordingly, the circuit court did not err when it overruled Walker's motion for partial summary judgment based on the doctrine of collateral estoppel. We affirm the circuit court's decision.
 II. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING EXTRINSIC AND COLLATERAL IMPEACHMENT EVIDENCE TO BE INTRODUCED AT TRIAL.
 III. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING HIGHLY PREJUDICIAL IMPEACHMENT EVIDENCE TO BE INTRODUCED AT TRIAL.
 IV. WHETHER THE CIRCUIT COURT JUDGE COMMITTED REVERSIBLE ERROR IN ALLOWING CHARACTER EVIDENCE PERTAINING TO THE APPELLANT TO BE INTRODUCED AT TRIAL.
 ¶ 17. Because Walker challenges the same pieces of evidence in all three issues, for brevity's sake and judicial economy, it is more efficient to address each piece of evidence individually, rather than in each of Walker's three issues. Still, we are limited by our standard of review. The relevance and admission or exclusion of evidence is a matter of the trial court's discretion which will be reversed only for an abuse of that discretion which results in prejudice to a party. Shearer v. State,423 So.2d 824, 827 (Miss. 1982).
A. Did the circuit court err when it allowed Benz to cross-examine Walker on the subject of Walker's threat to break a physician's leg?
 ¶ 18. Here, Walker challenges the admissibility of evidence that Benz brought out when he cross-examined Walker. Benz's attorney brought up a conversation that Walker had with a former employer. During that conversation, Walker told his former employer that he threatened to break a doctor's leg because that doctor would not prescribe pain medication to alleviate Walker's knee pain. Specifically, Walker told that doctor, "You son of a b____ you told me it wasn't swelling. Well, I'll tell you one d____ thing . . . [y]ou let me catch you on the street, and I'll break your g__d___ leg, and I'll show you what it feels like."
 ¶ 19. Walker objected and argued that the line of questioning was immaterial. *Page 1268 
Benz argued that the evidence was pertinent to show that Walker had a violent personality and to show Walker's aggressive temper. Walker responded and pointed out that Benz did not claim that Walker threatened him. After considering each argument, the circuit court determined that the evidence was admissible.
 ¶ 20. On appeal, Walker claims that his threat to break a physician's leg should have been excluded because it was immaterial and irrelevant, highly prejudicial, and improper character evidence. Benz argues that the evidence was admissible to impeach Walker's version of events and bolster his version.
 ¶ 21. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. M.R.E. 401. So, does the fact that Walker once threatened a physician make, as Benz suggests, it more or less probable that Walker called Benz a crook and did not just thank Benz?
 ¶ 22. From Benz's point of view, it would benefit Benz to point out Walker's threat. The threat could be seen as aggressive behavior. Similarly, Benz alleged that Walker engaged in aggressive behavior when Walker called Benz a crook. Thus, one could conclude that, because Walker aggressively threatened to break a doctor's leg, it is more likely that Walker aggressively called Benz a crook. Alternatively, one could draw a distinction between Walker threatening a physician and insulting an attorney. Especially since, as here, Benz makes no allegation that Walker physically threatened him in any way. From such a point of view, Walker's threat would not make it more likely that Walker insulted Benz, since the two behaviors are distinguishable.
 ¶ 23. From either point of view, Rule 404 of the Mississippi Rules of Evidence becomes relevant. Pursuant to M.R.E. 404(a), "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Applying M.R.E. 404(a), we find that Walker's threat is not admissible. Benz specifically argued that the purpose of Walker's threat was to show that Walker had an aggressive or violent personality and that, as such, it is more likely that Walker insulted Benz. So, Walker's purported aggressive or violent character should not have been admitted to show that Walker acted aggressively when he went to Benz's office and insulted Benz.
 ¶ 24. There are exceptions to M.R.E. 404(a). Evidence that would otherwise be excluded under M.R.E. 404(a) is admissible if it is "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor[.]" M.R.E. 404(a)(2). Substituting "plaintiff" for "victim" and "defendant" for "accused," Benz's threat to break a physician's leg is still inadmissible. Benz presented no evidence that Walker did anything more than call Benz a crook. There is no evidence that Walker threatened Benz or took any action that could have been perceived as a physical threat. Rather, Benz admitted that Walker did not physically threaten him. When combined with the fact that Benz attacked Walker from behind as Walker was getting into his truck, we find there is no doubt that Walker's tendency towards aggressive behavior, at the time Benz introduced the evidence, was not a pertinent character trait of Walker.
 ¶ 25. Still, there are other exceptions. "Evidence of other crimes, wrongs, or acts *Page 1269 
is not admissible to prove the character of a person in order to show that he acted in conformity therewith." M.R.E. 404(b). "It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Walker's threat to break a physician's leg does not fall under any category of M.R.E. 404(b). It follows that the circuit court abused its discretion when it permitted the admission of evidence prohibited by the Mississippi Rules of Evidence.
 ¶ 26. As mentioned, we will not reverse a decision to admit improper evidence unless that decision prejudices a party.Shearer, 423 So.2d at 827. As Benz argued, Walker's threat to break a doctor's leg tended to prove that Walker was unusually aggressive, violent, and unreasonable. Such a person could be considered a "bad" man who "deserved a beating" and does not deserve damages for assault. The evidence at issue could feasibly lead the jury to believe that Walker, who was so willing to threaten others, got exactly what he deserved when Benz assaulted him. However, that is not a proper topic for the jury to consider. Rather, the jury was obligated to consider whether Benz assaulted Walker and whether Benz's actions were unreasonable at the time.
 ¶ 27. As such, we reverse the decision of the circuit court and remand this matter for a new trial. At that subsequent trial, the circuit court should prohibit Benz from introducing this evidence.
B. Did the circuit court err when it allowed Benz to cross-examine Walker on the subject of Walker's threat to throw a man off a bridge?
 ¶ 28. Here, Walker challenges the circuit court's decision to allow Benz to introduce evidence that Walker once threatened to throw a man off a bridge, after that man hit Walker's car with his car. However, Walker did not make a contemporaneous objection at trial. Failure to make a contemporaneous objection at trial operates as a waiver of that issue on appeal. DeSalvo v. State,776 So.2d 704 (¶ 20) (Miss.Ct.App. 2000).
C. Did the circuit court err when it allowed Benz to cross-examine Walker on the subject of Walker's child support arrearages?
 ¶ 29. In this issue, Walker claims the circuit court erred when it allowed Benz to introduce evidence that Walker was severely delinquent in his child support payments. That evidence entered the record when Benz impeached Walker with statements from Walker's car wreck deposition testimony. On cross-examination, Benz revealed that Walker had lost his driver's license due to nonpayment of his child support obligations. Further, Benz revealed that Walker's support obligations extended to 1998, at least three years prior to the incident with Benz. On appeal, Walker argues that his child support delinquency was irrelevant, prejudicial, and improper character evidence.
 ¶ 30. Prior to Benz's impeachment, Walker testified that he loved his children, that they came first in his life, and that he would protect them until "the day the world goes to the end." Walker also testified that he wanted to help his children but could not "do" anything at that point. Further, Walker testified that it "killed him" that he could not provide for his children. According to Walker, he could not support his children because he could not work as a result of Benz's assault. Shortly afterwards, Benz brought up Walker's child support delinquency. *Page 1270 
 ¶ 31. Benz argues that Walker's child support delinquency contradicted Walker's claim for emotional distress damages. Walker claimed that he suffered mental anguish because he could not support his children, buy them Happy Meals at McDonalds, or purchase Christmas gifts for them for two years after Benz attacked him. We agree.
 ¶ 32. In Blake v. Clein, 903 So.2d 710 (¶ 40) (Miss. 2005), the Mississippi Supreme Court held that a plaintiff opened the door to an inquiry and that "a significant component of plaintiff's claims [were] related to emotional distress and mental anguish" so that reversible error resulted where "the defense was denied an opportunity to legitimately explore the plaintiff's own statements regarding the origin and/or source, cause, and extent of [the plaintiff's] psychological injury, agitation and disturbance." Id. Likewise, Benz is allowed to explore Walker's emotional distress and contradict Walker's proof of emotional distress damages.
 ¶ 33. Still, we must discuss M.R.E. 403. "M.R.E. 403 is the ultimate filter through which all evidentiary objections eventually flow." Ware v. Entergy Mississippi, Inc.,887 So.2d 763 (¶ 29) (Miss. 2003). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." M.R.E. 403.
 ¶ 34. Here, as in Blake, "the probative value of exploring the origin and/or source, cause, and extent of [Walker's] emotional distress, mental anguish, and psychological injury, outweighed the danger of unfair prejudice." Id. at (¶ 41).
D. Did the circuit court err when it allowed Benz to cross-examine Brenda Ellis on the subject of her suffering domestic abuse at the hands of Walker?
 ¶ 35. Walker called Brenda Ellis to testify during Walker's case-in-chief. At the time of trial, Ellis was Walker's girlfriend of approximately sixteen years. Ellis and Walker cohabited and have two daughters. They lived as husband and wife, for all intents and purposes. On direct, Ellis testified that she and Walker had a great relationship, confided in and cared for one another, that they were "great together," and had grown "very close over the years." Ellis also testified that, after the incident, Walker cried often and that he became excited and paranoid, though he was not depressed, paranoid, or excited before Benz beat him up.
 ¶ 36. On cross-examination, Benz impeached Ellis with a statement that Ellis gave Officer Robert Tate of the Greenwood Mississippi Police Department. According to that statement, Walker hit Ellis with his open hand and put a gun to Ellis's head. Ultimately, Walker was convicted for domestic violence. On appeal, Walker argues that the evidence was immaterial and irrelevant, prejudicial, and improper character evidence. We disagree.
 ¶ 37. Ellis's testimony suggested that Walker suffered emotional distress damages. That is, Ellis testified that she and Walker had a great relationship before Benz beat Walker up, but their relationship suffered because Walker was depressed and anxious after Benz beat him up. By testifying as such, Ellis opened the door to Benz's impeachment. Blake, 903 So.2d at (¶ 40). Walker's domestic violence contradicts Ellis's contention that their relationship, which was "great" before the incident, suffered as a result of the incident. *Page 1271 
 ¶ 38. Arguably, evidence of Walker's domestic violence is prejudicial. However, in light of its impeachment value, we cannot say that the circuit court abused its discretion in admitting the evidence.
E. Did the circuit court err when it allowed David Fondren to testify that Walker behaved aggressively on three separate incidents?
 ¶ 39. Benz called David Fondren to testify during Benz's case-in-chief. Fondren testified that he lived near Walker. Further, Fondren testified that, in April or May of 2003, Walker went to Fondren's house, called Fondren a son of a bitch, and threatened to kill Fondren and his dog because Fondren's dog scratched Walker's daughter. Not only that, on a separate incident, Walker screamed, "Fondren, come back down here. I'll beat your a —," as Walker chased Fondren's car and threatened to beat Fondren with a club. Finally, Fondren testified that, on a third incident, Walker shook his fist at Fondren and gestured threateningly.
 ¶ 40. On appeal, Walker argues that Fondren's testimony was irrelevant, immaterial, overly prejudicial, and improper character evidence. Benz argues that Fondren's testimony was admissible for several reasons. First, Benz argues that Fondren's testimony was admissible to impeach Ellis's testimony that Walker was not aggressive with people prior to the incident with Benz. However, Fondren testified that Walker behaved aggressively after the incident, as Benz beat Walker up on January 24, 2002, and Fondren testified that Walker threatened him during April or May of 2003.
 ¶ 41. Second, Benz argues that Fondren's testimony was admissible to impeach Flolane Walker, Walker's mother. Flolane testified that Walker could not get along with people after the incident. While Flolane's testimony might suggest that Walkercould get along with people before the incident, as with the argument above, Fondren's testimony addresses Walker's behavior after the incident. So, Fondren's testimony actually bolstered Ellis's and Flolane's testimony that Walker could not get along with people after Benz assaulted him.
 ¶ 42. Finally, Benz argues that Fondren's testimony impeaches Walker's version of the incident and bolsters his version of the incident. As discussed in the issue regarding Walker's threat to break a doctor's leg, Walker's aggressive character is not admissible to prove that Walker acted aggressively and provoked Benz.
 ¶ 43. Pursuant to M.R.E. 404(a), "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Applying M.R.E. 404(a), we find that Walker's threats to Fondren are not admissible. Benz specifically argued that the purpose of Walker's threats to Fondren were to show that Walker had an aggressive or violent personality and that, as such, it is more likely that Walker insulted Benz. So, Walker's purported aggressive or violent character should not have been admitted to show that Walker acted aggressively when he went to Benz's office and insulted Benz.
 ¶ 44. As discussed above, we will not reverse a decision to admit improper evidence unless that decision prejudices a party.Shearer, 423 So.2d at 827. Like Walker's threat to break a doctor's leg, Fondren's testimony regarding his interactions with Walker tended to prove that Walker was unusually aggressive, violent, and unreasonable. Since we remand this matter for a new trial, the circuit court should prohibit Benz from introducing this evidence. *Page 1272 
 ¶ 45. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT ISREVERSED AND REMANDED TO THE CIRCUIT COURT FOR A NEW TRIAL. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.