951 So.2d 622 (2007)
Barbara KIDD, Appellant
v.
McRAE'S STORES PARTNERSHIP, Appellee.
No. 2005-CP-01918-COA.
Court of Appeals of Mississippi.
March 13, 2007.
Barbara Kidd, Appellant, pro se.
Robert F. Stacy, Terry Dwayne Little, Oxford, Attorneys for Appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
*623 BARNES, J., for the Court.
¶ 1. This premises liability action arose after Barbara Kidd tripped and fell at the McRae's Department Store in Tupelo, Mississippi. Kidd, appearing pro se, appeals the judgment of the Circuit Court of Lee County, after a jury found for the defendant, McRae's Stores Partnership ("McRae's"). On appeal, Kidd contends that the verdict was against the overwhelming weight of the evidence and the trial court erred in limiting expert testimony regarding future medical expenses. Finding no error, we affirm the judgment of the circuit court.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On May 17, 2000, Barbara Kidd went to the McRae's Department Store located in the Barnes Crossing Mall in Tupelo, Mississippi to return a dress she had purchased. While walking through the cosmetics area, she tripped and fell, alleging that the toe of her shoe caught an uneven portion of the tile floor which caused her to fall forward. It is undisputed that as a result of her fall, Kidd suffered a broken left arm.
¶ 3. Kidd was referred to Dr. Kim Stimpson for her broken arm. Beginning on May 19, 2000, Dr. Stimpson proceeded to treat her conservatively with range of motion exercises and physical therapy. Six months after her fall, following an initial period of improvement with her elbow, Kidd began to complain to Dr. Stimpson about shoulder pain, which she stated had been present since the fall. She claimed this pain was inhibiting her ability to give massages, which was part of her business as a cosmetologist.[1] Kidd's last visit to Dr. Stimpson about her arm was on November 11, 2002.
¶ 4. On May 13, 2003, Kidd filed suit against McRae's[2] in the Circuit Court of Lee County, claiming the uneven tile in the store created a dangerous condition and caused her to fall. Kidd sought a judgment of $750,000 in compensatory damages and $1,000,000 in punitive damages. Kidd's medical expenses for her arm injury totaled $8,726.26. Additionally, Kidd claimed that her injury caused her emotional distress and further financial harm because she could no longer give massages at her cosmetology business which resulted in a loss of income.
¶ 5. Kidd's case went to trial on September 8, 2005. During Kidd's case-in-chief, she called Dr. Stimpson as a witness via deposition testimony. The defense, however, moved to exclude certain portions of Dr. Stimpson's testimony which was to be read to the jury. In his deposition, Dr. Stimpson had testified that the cost of two surgical procedures, one on the elbow and one on the shoulder, would be approximately $5,000 to $6,000 each. Defense counsel argued that the necessity of future surgery on Kidd was not stated to a reasonable degree of medical probability. The circuit court agreed that the future need for surgeries was never absolutely indicated as being necessary by Dr. Stimpson. Thus the testimony regarding the cost of the surgeries was found inadmissible and was not read to the jury.
*624 ¶ 6. During the trial, Kidd's expert witness, a flooring consultant named Andrew Holmes, testified that he had measured the height differential between the tiles where Kidd tripped. He found one tile to be in excess of 1/16 of an inch, or about the height of a dime, higher than the surrounding tile.[3] Holmes stated this height differential did not conform with the American National Standards Institute ("ANSI") or the Marble Institute of America's ("MIA") standards, both of which allow for only a 1/32 of an inch differential between tiles. However, Holmes was not aware of any definitive scientific study on tile safety and the likelihood of somebody tripping over height differentials of 1/32 of an inch, 1/16 of an inch, or 1/8 of an inch. Nor did he know of any safety studies done on the 1/32 of an inch ANSI and MIA standard. Ultimately, Holmes conceded that the ANSI and MIA 1/32 of an inch height differential standards were merely voluntary, and McRae's had no duty to follow this recommendation.
¶ 7. McRae's' store manager, Steve Cade, was called by the defense as a witness. He testified that the floor where Kidd fell was installed in 1989 and had not been modified since that time. The manager did not believe that the floor presented a dangerous condition. Further, he testified that nobody had ever complained to the store management about the condition of the floor and that there had never been a report of anyone falling in this area since the floor's installation.
¶ 8. McRae's' expert witness, Dr. George Hammitt, a professional flooring engineer, had also measured the floor with a ruler, shims, and a micrometer and found the height differential of the tile where Kidd fell to be 0.062 inches, or a little over 1/16 of an inch. He found the greatest height differential of the tiles surrounding the area where Kidd fell to be 0.071 inches. Regarding the requirements for public safety, Hammitt stated that McRae's must, and does, comply with the International Building Code and the Americans with Disabilities Act ("ADA"). He testified that while there is no height differential requirement stated in the International Building Code, the ADA's maximum height differential is no more than 1/4 of an inch, much greater than the differential presented here. Finally, Hammitt concluded that since the height differential of the tile at the accident's site did not violate any known code and was safe according to several national standards, including the American Society of Testing Materials, ANSI and ADA, the height differential was not unreasonably dangerous.
¶ 9. The jury returned a verdict for McRae's. Kidd now appeals.

LAW AND ANALYSIS
I. Whether the jury verdict was against the overwhelming weight of the evidence.
¶ 10. When an appellant challenges the jury verdict to be against the overwhelming weight of the evidence, this Court will give great deference to the jury verdict and resolve "all conflicts in the evidence and every permissible inference from the evidence in the appellee's favor." Wal-Mart Stores, Inc. v. Johnson, 807 So.2d 382, 389(¶ 16) (Miss.2001) (citing Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n, 560 So.2d 129, 131 (Miss.1989)). The jury is the ultimate arbiter of the weight of the evidence and the credibility of the witnesses. Breaux v. Grand Casinos *625 of Miss., Inc., 854 So.2d 1093, 1098(¶ 14) (Miss.Ct.App.2003) (citing Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980)). This Court will disturb a jury verdict only when it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Wal-Mart Stores, 807 So.2d at 389(¶ 16) (Miss.2001) (citing Herrington v. Spell, 692 So.2d 93, 103-04 (Miss.1997)).
¶ 11. In her brief, Kidd, appearing pro se, basically reiterates her argument at the trial level. She argues that McRae's was negligent in failing to repair its uneven floor tiles. Because the area of tile where she tripped was 1/16 of an inch out of alignment with surrounding tiles, she contends this was a dangerous condition. Kidd states that McRae's, under Mississippi law, has a duty to exercise reasonable care to maintain its premises in a reasonably safe condition. See McGovern v. Scarborough, 566 So.2d 1225, 1227 (Miss. 1990). Kidd concludes that having tile 1/16 of an inch out of plane is not reasonably safe. Since McRae's knew of this height differential since 1989 and did not repair it, Kidd argues that McRae's breached its duty of care to provide a safe floor for its customers.
¶ 12. Kidd's arguments, however, are issues which the jury properly decided at trial. It is the province of the jury to evaluate the weight of the evidence and the witnesses' credibility. Breaux, 854 So.2d at 1098(¶ 14). We find, after reviewing the record and evidence presented, with our deferent standard of review for the jury's decision, and resolving all conflicts of evidence and inferences in favor of the appellee, that there was ample evidence presented to justify the jury's verdict for the defendant, McRae's.
¶ 13. First, Kidd's expert, Andrew Holmes, testified that the height differential between two tiles where Kidd tripped was in excess of 1/16 of an inch, or about the height of a dime. A reasonable jury could infer through the evidence presented, not to mention their common sense, that the height differential of a little over a dime between two tiles certainly does not constitute an unreasonably dangerous condition. Further, Holmes never stated that this differential would create a dangerous condition. He stated that the ANSI and MIA standards were installation standards only, and he was unaware of any safety studies done where this height differential would be considered unreasonably dangerous. Holmes conceded that there are no required standards for height differential of tile which McRae's had a duty to follow. A jury could reasonably infer that while tile out of alignment 1/16 of an inch may violated an installation standard, McRae's did not have a duty to comply with these completely voluntary, non-safety standards.
¶ 14. Second, the manager of McRae's, Steve Cade, testified that since the time the floor had been installed in 1989 until Kidd's fall in 2000, there had never been any changes or modifications to it. Further, there was no record of anybody falling or complaining about the floor since its installation, thus a reasonable jury could infer that tiles differing in height by 1/16 of an inch do not create a dangerous condition.
¶ 15. Third, McRae's' expert witness, George Hammitt, a professional engineer, testified that all of the tile measurements he took, whether it be the greatest height differential of 0.071 inches, or the height differential of the tile where Kidd fell of 0.062 inches, complied with all known codes, standards, and requirements for safety. He differentiated between trade association installation standards and safety standards, pointing out that the MIA *626 and ANSI standards are voluntary. Again, a reasonable jury could rely on Hammitt's testimony as a sufficient basis for finding the tiles were not a dangerous condition and McRae's did not breach its duty of care to Kidd.
¶ 16. Finally, at trial, Kidd even testified that she was looking at the cosmetics counter, not the floor, when she tripped on the tile. A reasonable jury could infer that not watching where she was going was the proximate cause of Kidd's fall. Through the expert witnesses' and Kidd's own testimony, a reasonable jury could return a verdict for McRae's. Accordingly, this issue is without merit.
II. Whether the trial court erred in limiting deposition testimony regarding future medical expenses.
¶ 17. The well-settled standard of review for the admission or exclusion of evidence is abuse of discretion. Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss.2003) (citing Haggerty v. Foster, 838 So.2d 948, 958(¶ 25) (Miss. 2002)). The admission of expert witness testimony is within the discretion of the trial judge. Id. (citing Puckett v. State, 737 So.2d 322, 342 (Miss.1999)). Thus, the trial judge's decisions will stand "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." Id.
¶ 18. Kidd argues that the trial court erred in limiting the deposition testimony of Dr. Stimpson regarding future medical expenses-specifically, the cost of surgeries for injuries sustained during her fall. Maintaining that Dr. Stimpson's opinion was formed with sufficient medical certainty that she would require future surgery, Kidd argues that this testimony should have been heard by the jury concerning her future medical expenses.
¶ 19. Mississippi Rule of Evidence 702 states that if expert testimony "will assist the trier of fact to understand the evidence" and the witness is qualified, the testimony will be admitted. Yet, when an expert's opinion is not based on a reasonable degree of medical certainty, or the opinion is articulated in a way that does not make the opinion probable, the jury cannot use that information to make a decision. Catchings v. State, 684 So.2d 591, 597 (Miss.1996) (citing Schulz v. Celotex Corp., 942 F.2d 204, 207 (3rd Cir.1991) (internal citations omitted)). Failure to properly qualify an expert opinion typically occurs in testimony that is speculative, using phrases such as "probability," "possibility," or even "strong possibility." Id. (internal citations omitted). It is the intent of the law "that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision." Id. (internal citations omitted).
¶ 20. In our case, the trial judge allowed the portions of Dr. Stimpson's testimony where he discussed the possibility of two surgeries on Kidd's arm, but disallowed the portion of the testimony regarding the cost of these surgeries$5,000 to 6,000 each. In his deposition, at two different times, Dr. Stimpson testified regarding surgery:
Q. And what was your plan of treatment at that time [September 17, 2001]?
A. She was seen again for her elbow and shoulder, left side. . . . We discussed treatment options, including surgical evaluation of the shoulder, possible surgical treatment of her elbow.
. . . .
Q. And at that time [November 11, 2002] you did not feel that surgery was indicted for her left shoulder?

*627 A. We didn't have any plans to perform any surgery on her, no.
We find that the trial court did not err in limiting the deposition testimony of Dr. Stimpson regarding the costs of the surgeries because he never expressed an opinion to a degree of medical certainty that Kidd would ever require these surgeries. Accordingly, this issue is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] As part of her business, Kidd also performs electrolysis, facials, and applies permanent make-up.
[2] Kidd initially filed suit against the following defendants: McRae's Store at Barnes Crossing Mall, David Hocker & Associates, R.F. Coffin Enterprises, Barnes Crossing Mall, Inc., unknown defendant A and unknown defendant B. David Hocker & Associates and R.F. Coffin Enterprises were dismissed from the case. Kidd proceeded against McRae's Stores Partnerships, as the proper defendant.
[3] Holmes testified that he measured the tile differential by placing a dime on the lower tile and a credit card across the top of the dime in the area where the adjacent tile is higher.