ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Hinds County Circuit Court found Wackenhut Corporation and Rozivito Hoskins 75% at fault for injuries Ernie Fortune sustained at a McDonald’s restaurant. The jury awarded Fortune $1,000,000 in damages. Aggrieved, Wackenhut appeals and raises ten issues. Wackenhut claims the circuit court erred when it: (1) allowed Fortune’s expert witness economist to use the “earnings-capacity approach” to calculate Fortune’s future lost wages; (2) prohibited Wackenhut from presenting evidence regarding Fortune’s alcohol abuse; (3) allowed Fortune to claim he was entitled to damages for a future surgery; (4) allowed Fortune to substitute an expert witness at trial; (5) redacted medical bills after they had been entered into evidence; (6) refused Wackenhut’s proffered jury instruction on contributory negligence; (7) refused Wackenhut’s proffered jury instruction on reasonable force; (8) prohibited Wackenhut from introducing evidence of Fortune’s prior convictions; (9) prohibited Wackenhut from introducing evidence that Fortune was “homeless”; and (10) prohibited Wackenhut from introducing evidence of Fortune’s collateral sources of medical care.
¶ 2. Fortune concedes it was improper for his expert economist to calculate his future lost wages according to the “earnings-capacity approach.” Fortune also concedes the circuit court erred when it refused Wackenhut’s proffered instruction on contributory negligence. Consequently, Fortune agrees we must reverse the circuit court’s judgment and remand this matter for a new trial. However, Fortune claims there is no merit to Wackenhut’s other claims. For the sake of judicial economy, we choose to address Wacken-hut’s remaining issues that are reasonably likely to arise again upon retrial.
¶ 3. After careful consideration, we find the circuit court also erred when it prohibited Wackenhut from introducing evidence of Fortune’s alcohol use to demonstrate the likelihood of Fortune’s decreased life expectancy. We further find that the circuit court erred when it allowed Fortune’s expert witness to testify that Fortune should receive damages for a future surgery when there was no evidence that Fortune met the necessary qualifications for the surgery. Furthermore, we find the circuit court erred when it refused Wack-enhut’s proffered jury instruction on contributory negligence. Accordingly, we reverse the judgment of the circuit court and remand this matter for a new trial consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 4. At approximately 8:30 p.m. on July 27, 2008, fifty-one-year-old Ernie Fortune went into a McDonald’s restaurant in Jackson, Mississippi. Fortune did not want to buy anything. Instead, he intended to use the self-serve drink machine to get a free refill of ice in a McDonald’s cup he had obtained hours earlier that day.
¶ 5. Tracey Luckett, McDonald’s manager on duty at that time, told Fortune McDonald’s policy prohibited him from refilling a cup after he had left the restaurant. Fortune believed he should be allowed to refill a cup he had acquired hours earlier that day. Although there are different versions of the tone and character of the discussion between Fortune and Luckett, it is undisputed that Fortune became frus *1087 trated and left the restaurant without refilling his cup or purchasing anything.
¶ 6. A short time later, Fortune went back inside the restaurant and tossed one dollar to Luckett. Fortune explained he did not want to buy anything for himself. Fortune told Luckett the dollar was for the next customer who wanted a cup of ice. According to Luckett, Fortune was cursing, disruptive, agitated, and confrontational. Subsequent blood testing hours later revealed that Fortune’s blood-alcohol level was .276.
¶ 7. My Joy, Inc., the owner of the McDonald’s franchise at issue, had entered into a contract for security services with Wackenhut Corporation. At that time, Hoskins was the Wackenhut security officer on duty at McDonald’s. The record contains contrasting versions of events regarding what happened next. However, it is undisputed that Hoskins shoved Fortune outside, where Fortune fell to the ground. Hoskins claimed he had acted in self-defense when he pushed Fortune outside because Fortune had a knife. Fortune denied having a knife, but Detective Reginald Cooper of the Jackson Police Department later testified that according to a police report, a knife was recovered from the scene.[1]
¶ 8. Fortune claimed Hoskins stomped and kicked him multiple times. But according to Hoskins, he merely stepped over Fortune, who was lying on the ground. It is undisputed that Fortune broke the humerus bone in his right arm at some point during the altercation. Fortune was hospitalized. He required surgery that involved stabilizing his broken arm with an “intramedullary nail.”
¶ 9. Fortune sued Wackenhut, Hoskins, My Joy, Inc., McDonald’s, and Luckett. On November 30, 2009, the parties went to trial. The jury found Wackenhut and Hos-kins 75% liable for Fortune’s injuries and awarded Fortune $600,000 for pain and suffering, $194,000 for lost past and future earnings, $106,000 for past and future medical expenses, and $100,000 for Fortune’s “physical impairment and/or functional limitations” for a total award of $1,000,000. After unsuccessful post-trial motions for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial or remittitur, Wackenhut and Hoskins appeal.[2]
ANALYSIS
I. EARNINGS-CAPACITY APPROACH
¶ 10. Wackenhut[3] argues that this case should be reversed and remanded for a new trial because Fortune’s expert witness, Dr. Glenda Glover, used the earnings-capacity approach to calculate Fortune’s loss of future earnings. Fortune concedes we should reverse the circuit court’s judgment and remand this case for a new trial pursuant to the Mississippi Supreme Court’s decision in Rebelwood Apartments RP, LP v. English, 48 So.3d 483 (Miss.2010). In Rebelwood, the su *1088 preme court held that the same expert, Dr. Glover, should not have been permitted to utilize the earnings-capacity approach when calculating a plaintiffs loss of future earnings because Dr. Glover’s testimony was not based on sufficient facts or data. Id. at 496 (¶ 58).
¶ 11. Dr. Glover used the same methodology in this case as she used in Rebel-wood. As Fortune concedes, this case must be reversed and remanded for a new trial. Accordingly, the judgment of the circuit court is reversed and this matter is remanded for a new trial, in which neither Dr. Glover nor any other expert witness may calculate Fortune’s loss of future earnings based on the earnings-capacity approach, which is not founded on sufficient facts or data. For the sake of judicial economy, we address those issues that may become relevant on remand.
II. FORTUNE’S ALCOHOL ABUSE
¶ 12. Fortune filed a motion in limine to exclude “irrelevant information in medical records.” To be precise, Fortune wanted to exclude “medical records that reference ... Fortune’s past alcohol use or having alcohol in his system at the time of the incident.” Wackenhut argued that evidence of Fortune’s past alcohol abuse was relevant because Fortune sought lost wages and implicitly claimed he had a preexisting wage earning capacity that was interrupted when he was injured at McDonald’s. Wackenhut reasoned it should be allowed to submit evidence demonstrating Fortune was not working prior to the incident at McDonald’s because Fortune had a series of pre-existing injuries that involved alcohol consumption. Wackenhut also argued Fortune’s past alcohol abuse was admissible to demonstrate Fortune had a diminished life expectancy for the purposes of calculating Fortune’s earning capacity for the remainder of his lifetime. The circuit court disagreed with Wacken-hut and held evidence of Fortune’s past alcohol abuse was inadmissible because it was irrelevant. However, Wackenhut was allowed to submit evidence that Fortune’s blood-alcohol level was .276 immediately before his surgery the night of the incident. Wackenhut was not allowed to discuss Fortune’s being administered beer at the hospital to prevent the onset of delirium tremors arising from his chronic alcoholism. Wackenhut proffered Fortune’s medical records and brief testimony from Fortune’s expert physician, Dr. Howard Katz.
¶ 13. Wackenhut claims the circuit court erred because Fortune’s history of alcohol abuse was relevant to his claim for past and future medical treatment and lost wages. Wackenhut further argues Fortune “opened the door” to evidence of his past alcohol abuse.
¶ 14. We will reverse a circuit court’s decision regarding the relevance and admission or exclusion of evidence if the circuit court abused its discretion and caused a party to suffer prejudice. Walker v. Benz, 914 So.2d 1262, 1267 (¶17) (Miss.Ct.App.2005). “Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. Thus, the question is whether Fortune’s history of alcohol abuse tends to make a consequential fact more or less probable.
¶ 15. In Carroll v. Morgan, 17 F.3d 787, 791 (5th Cir.1994), records from a treatment center for alcohol and drug abuse were admissible on the issue of damages. The Fifth Circuit held that the defendant in that case was entitled to show the plaintiff “was not a healthy person and that his intemperance might have resulted in a reduced life expectancy.” Id. Fur *1089 thermore, the Mississippi Supreme Court has held that a defendant “has the right to show [a plaintiffs] physical condition and that [the plaintiff] was not a healthy person” when the plaintiff seeks damages based on what he or she might have earned for the remaining portion of his or her lifetime. Pharr v. Anderson, 436 So.2d 1357, 1360 (Miss.1983).
¶ 16. Fortune argues that evidence of his alcohol use was inadmissible pursuant to Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 620 (¶ 31) (Miss.2001). In that case, the Mississippi Supreme Court addressed a defendant’s claim that evidence of a plaintiffs drug use should have been admissible to refute mortality tables used to calculate damages because drug use would have an impact on life expectancy. Id. The supreme court held evidence of the plaintiffs drug use was not admissible because: (1) the defendant had not sufficiently proffered the excluded evidence by merely offering “that there was some evidence of prior drug use (including one page of a doctor’s handwritten notes and [a] toxicology report ...)” and a doctor’s statement that did not causally relate the plaintiffs prior drug use to the plaintiffs illness; (2) the defendant failed to demonstrate that exclusion of the evidence adversely affected a substantial right; (3) the evidence was irrelevant; and (4) “such evidence would have far-reaching and severe prejudice.” Id. at (¶ 32).
¶ 17. As mentioned, Wackenhut proffered Fortune’s medical records outside of the jury’s presence during Dr. Katz’s testimony. Dr. Katz conducted an independent medical evaluation of Fortune. Dr. Katz’s report included notations of Fortune’s past medical treatment. Dr. Katz noted Fortune had sought medical treatment from multiple hospitals in Jackson for intoxication or symptoms associated with alcohol abuse at least forty times between July 1999 and January 2009. On March 16, 2002, Fortune underwent a CT scan, which reported Fortune had “cerebral and cerebellar atrophy greater than expected for [his] stated age.” There are numerous references to Fortune suffering from “chronic cirrhosis of the liver.” Dr. Katz also noted:
Mr. Fortune states mostly he has been drinking constantly since he was thirteen years old and [has] never stopped drinking. He has been hit twice by cars that were hit and run while he was walking down the street intoxicatedf,] and [he] walked off a platform [o]nto a concrete floor while he was intoxieated[,] which caused multiple fractures. Mr. Fortune has difficulty remembering most of his life because he [has] spent most of his life intoxicated.
Evidence of Fortune’s history of alcohol abuse tends to make it more probable that he has a diminished life expectancy when compared to someone who does not have a similar history of alcohol abuse. Therefore, evidence of Fortune’s alcohol abuse is particularly relevant when calculating Fortune’s earnings for the remainder of his work life.
¶ 18. “[Mississippi Rule of Evidence] 403 is the ultimate filter through which all evidentiary objections eventually flow.” Ware v. Entergy Miss., Inc., 887 So.2d 763, 774 (¶29) (Miss.2003). “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403. Undoubtedly, evidence of Fortune’s extensive history of chronic alcohol abuse is prejudicial to him. “It is inherent that nearly all evidence is prejudicial to a party in one way or another. The inquiry as it regards *1090 admissibility is whether that prejudice is unfair.” Abrams v. Marlin Firearms Co., 838 So.2d 975, 981 (¶ 22) (Miss.2003). Fortune’s history of alcohol abuse has significant probative value regarding his remaining life expectancy. Where an error involves an evidentiary matter, an appellate court “will not reverse unless the error adversely affects a substantial right of a party.” James v. Carawan, 995 So.2d 69, 75 (¶ 22) (Miss.2008) (citations omitted). Given the precise circumstances of this case, Wackenhut had a substantial right to rebut Fortune’s claim for lost future earnings for the remainder of Fortune’s life expectancy. We, therefore, find the circuit court abused its discretion when it prohibited evidence regarding Fortune’s alcohol abuse. Upon remand, Wackenhut may introduce evidence of Fortune’s alcohol abuse to demonstrate the likelihood that Fortune has a diminished life expectancy or employability, or will experience future pain and suffering. However, it is not necessary to belabor the point by drawing the jury’s attention to each individual instance Fortune sought medical treatment for intoxication or symptoms of alcoholism. Such a presentation would unduly prejudice Fortune when the evidence is only admissible to demonstrate the likelihood Fortune has a diminished life expectancy for the purpose of calculating Fortune’s expected earnings for the remainder of his life. Additionally, should Fortune request an appropriately worded limiting instruction, the circuit court may give an instruction informing the jury it may not consider evidence of Fortune’s alcohol abuse for any purpose except as it relates to Fortune’s claims for damages.
¶ 19. Based on our resolution of this issue, Wackenhut’s claim that Fortune opened the door to evidence of his alcohol abuse is moot.
III. EVIDENCE OF FUTURE SURGERY
¶ 20. Wackenhut claims the circuit court erred when it allowed Fortune to introduce evidence he should recover damages for future surgery he may not actually have. Like the previous issue, this issue pertains to testimony from Dr. Katz. Dr. Katz sought to testify that Fortune would need approximately $25,000 in damages to compensate him for future surgery to remove the intermedullary pin that was placed in Fortune’s humerus. Wackenhut objected and claimed Dr. Katz’s testimony regarding future surgery was based on speculation.
¶ 21. Wackenhut voir dired Dr. Katz outside the presence of the jury. During voir dire, Dr. Katz testified:
[T]o a reasonable degree of medical certainty!,] [Fortune] would benefit from future surgery. I can’t say that it will be performed because I don’t know that Mr. Fortune would agree to it.... But as far as what would benefit him, there’s no question in my mind that he would be benefit[t]ed by surgery.
Dr. Katz then explained that in order for Fortune to have the surgery, Fortune would first have to stop drinking for a period of time and pass a complete medical evaluation, “including a liver function test.” Fortune’s attorney indicated Fortune had been sober for approximately one year. But Wackenhut’s attorney pointed out a lack of evidence to support Fortune’s attorney’s claim. Ultimately, the circuit court denied Wackenhut’s motion in limine and allowed Dr. Katz to testify Fortune would benefit from “arthroscopic surgery and ... a capsulectomy and probably remove the hardware [in Fortune’s humerus] at the same time.” Dr. Katz also testified those procedures would cost approximately $25,000.
*1091 ¶ 22. Wackenhut claims the circuit court erred. According to Wackenhut, Dr. Katz’s testimony was based on speculation that Fortune would be a candidate for future surgery. “[T]o be recoverable, damages must be shown with reasonable certainty and not left to speculation and conjecture.” Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1164 (Miss.1992) (citations omitted). When a physician who had not practiced surgery for eight or nine years “guessed” that surgery would cost $20,000, that testimony was insufficient to establish substantial, credible evidence to support a $20,000 award for future surgery. City of Jackson v. Spann, 4 So.3d 1029, 1039 (¶ 34) (Miss.2009) (citation omitted).
¶ 23. “The admission of expert witness testimony is within the discretion of the trial judge.” Kidd v. McRae’s Stores P’ship, 951 So.2d 622, 626 (¶ 17) (Miss.Ct.App.2007) (citation omitted). Mississippi Rule of Evidence 702 states that if expert testimony “will assist the trier of fact to understand the evidence” and the witness is qualified, the expert testimony will be admitted. But if “an expert’s opinion is not based on a reasonable degree of medical certainty, or the opinion is articulated in a way that does not make the opinion probable, the jury cannot use that information to make a decision.” Kidd, 951 So.2d at 626 (¶ 19) (citing Catchings v. State, 684 So.2d 591, 597 (Miss.1996)). “It is the intent of the law that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision.” Id. (internal quotation omitted).
¶ 24. In Kidd, this Court held that a trial court correctly prohibited testimony from a physician who opined that a plaintiff might possibly benefit from two surgeries because the physician never testified that in his opinion, within a reasonable degree of medical certainty, the plaintiff would actually require those surgeries. Id. at 627 (¶ 20).
¶ 25. The issue in this case is not whether Fortune would benefit from the surgery, but whether he would be a candidate for the surgery. During the proffer, Dr. Katz testified that Fortune would have to meet certain conditions before he could be considered a candidate for surgery. Specifically, Dr. Katz testified:
[I]f I were the doctor who was making these decisions, I would first of all have a certain period of time that I would have expected him to no longer be drinking and have the AA to approve it. I also would ... do a complete medical evaluation of him including a liver function test and make sure that I thought that it was safe.
The following exchange then transpired:
Q. But just so we’re clear on this, your opinion that he might benefit from surgery requires as a condition foreseen to that surgery ... that he shall appear in sobriety and [obtain] a token from AA. Correct?
A. I would say yes. And also that he — again, if I were the doctor that he made a verbal commitment to[,] and ... I believed that commitment from him that he would continue to be sober for a minimum of another ten weeks and that he was willing and would assure me that he would participate in physical therapy for at least ten weeks.
[[Image here]]
Q. Ten weeks. And so based on your review of his medical records, again, you cannot state to a reasonable degree of certainty that he would satisfy any of these conditions proceeding surgery?
*1092 A. Well, you can see in my report that I was hesitant, and what I said was that to a reasonable degree of medical certainty he would benefit from surgery; however, to a reasonable degree of medical certainty — well, I didn’t say it quite that way. Let’s see what I said. “Although he’s at increased risk requiring additional surgery to his right upper extremity, to try to improve the range of motion to [his] right shoulder, I cannot anticipate any of those to the reasonable degree of medical certainty.” For one thing, Mr. Fortune choosing to have surgery, it would take him to choose, and when I say choose that includes all those things that [we have] talked [about] that he has to agree to remain sober and that we have a strict plan as far as how he’s going to handle the pain, etc. I do believe he could benefit from shoulder surgery at some point to improve range of motion, meaning that if he agrees to all of those things, then he can benefit from surgery, but without that, he cannot.
[[Image here]]
Q. And again, that speculates as to a number of issues including his recovery and his compliance with the doctor’s orders?
A. That would be correct. And it would require probably about in addition to the period of time that he’s sober prior to surgery, a good ten weeks after surgery, but I’d say a good 12 weeks of compliance, three solid months of compliance, of doing things just as he’s told to do from a medical perspective.
Q. And again, this is speculation at this point. Correct?
A. I guess so. I’m just answering your question.
¶ 26. Dr. Katz’s opinion was clear: If Fortune remained sober for a long enough period and had an acceptable liver-function test, he would be a candidate for further surgery. Fortune’s attorney later represented that Fortune had been sober for approximately one year. However, defense counsel noted that there was no evidence to support Fortune’s attorney’s claim.
¶ 27. We find the circuit court erred when it allowed Dr. Katz to testify that Fortune should receive $25,000 for a future surgery when there is no evidence Fortune would meet the conditions Dr. Katz mentioned. It is certainly speculative to say Fortune will have the surgery because he will only do so if: (1) he chooses to have the surgery, (2) he has been sober long enough, and (3) he passes a liver-function test. Although Fortune’s attorney stated Fortune had been sober for one year, statements by attorneys are not evidence. As it stands, there is no evidence Fortune qualified for future shoulder surgery. Upon remand, Fortune should only be allowed to recover damages for future surgery if an expert testifies to a reasonable degree of medical certainty that Fortune will require that surgery and Fortune meets the qualifications for that surgery.
IV. SUBSTITUTION OF FORTUNE’S EXPERT WITNESS
¶ 28. At trial, Fortune’s expert economist, Dr. Glover, was unavailable due to an illness. Over Wackenhut’s objection, the circuit court allowed Fortune to substitute James Henley for Dr. Glover. Henley adopted Dr. Glover’s testimony and her expert opinion regarding Fortune’s future lost wages. According to Wackenhut, because Fortune did not preserve Dr. Glover’s testimony by deposing her before the trial, Fortune had no relief when his expert witness became unavailable during trial. Because this issue is unlikely to *1093 arise upon remand, we decline to address it.
V. REDACTION OF DOCUMENTS
¶ 29. Next, Wackenhut claims the circuit court erred when it redacted documents after they had been entered into evidence. To be precise, Wackenhut argues the circuit court erred when it removed references to Fortune’s treatment for alcoholism from medical records that had been entered into evidence. This issue is also unlikely to arise again on remand. Furthermore, based on our conclusion that the circuit court erred when it prohibited evidence of Fortune’s alcohol abuse to demonstrate the likelihood of Fortune’s diminished life expectancy, this issue is moot.
VI. PROFFERED JURY INSTRUCTION D-ll
¶ 30. Wackenhut claims the circuit court erred when it refused its proffered jury instruction on contributory negligence. “The general rule with regard to jury instructions is that the trial court has considerable discretion when instructing the jury, and the instructions are to be read as a whole.” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 474 (¶ 78) (Miss.2010) (citation omitted). No reversible error will be found so long as the instructions actually given fairly announce the law of the case and create no injustice when read as a whole. Walr-Mart Stores, Inc. v. Johnson, 807 So.2d 382, 390 (¶ 20) (Miss.2001) (citation omitted). “Furthermore, each party is entitled to embody its theory of the case in the jury instructions provided there is testimony to support it, but only if made conditional upon the jury’s finding that such facts existed.” Id. (citation and internal quotation omitted). “However, a trial judge may refuse a proposed jury instruction that is an incorrect statement of the law, repeats a theory covered in other instructions, or has no proper foundation in the evidence before the court.” Utz, 32 So.3d at 474 (¶ 78) (citation omitted).
¶ 31. The proffered jury instruction at issue, designated as D-ll, states:
The Court instructs the jury that “contributory negligence” is conduct on the part of a person contributing as a cause to the harm he ... has suffered and falling below the standards to which [he] is required to perform in his ... best interests. You are further instructed that [Fortune] is not entitled to recover damages for the harm that [he] could have avoided by the use of due care, nor from the harm which proximately resulted from his own conduct, if any, which contributed to his damages.
If you find from a preponderance of the evidence that, in coming [onto] the subject premises, attempting to obtain My-Joy products without payment, engaging in a verbal altercation with the employees of MyJoy, Inc. and/or Wackenhut Corporation, remaining on the subject premises after being asked to leave, or brandishing a weapon-like object before, during or after the subject incident, [Fortune] failed to act as a reasonably careful person in his own best interests, and that such acts or omissions on the part of [Fortune] were a proximate contributing cause of [Fortune’s] damages, then you shall allocate a percentage of fault to [Fortune].
¶ 32. Wackenhut claims the circuit court improperly refused to instruct the jury on its theory of the case. Fortune concedes that the circuit court erred. We agree. There was evidence that Fortune went into McDonald’s to refill -a cup with ice. Fortune testified that he had purchased the cup hours earlier. Luckett testified . that Fortune did not attempt to make a new purchase. That is, Fortune *1094 only wanted to refill his cup with ice from the self-serve drink machine. McDonald’s policy does not allow people, without making a contemporaneous purchase, to bring cups into a restaurant and refill them with ice. Luckett testified that she informed Fortune of McDonald’s policy, and Fortune became combative. Fortune left the restaurant and returned shortly thereafter. Although there was some dispute regarding the nature of Fortune’s behavior, Luckett testified that Fortune acted in a confrontational manner when he attempted to give her one dollar, stating it was for the next customer who came in to get a cup of ice. Hoskins testified that he had asked Fortune to leave. Hoskins further testified he had approached Fortune while asking him to leave, and Fortune had brandished a weapon Hoskins described as a knife. Detective Cooper of the Jackson Police Department testified that according to a police report, a knife was recovered from McDonald’s.
¶ 33. Based on the testimony discussed above, we find there was evidence to support proffered instruction D-ll on contributory negligence. It follows that the circuit court abused its discretion when it refused to instruct the jury according to proffered instruction D-ll. Accordingly, we reverse the circuit court’s judgment. Upon remand, Wackenhut should be allowed to instruct the jury according to its theory of the case if the evidence supports such an instruction.
VII. PROFFERED JURY INSTRUCTION DH-26
¶ 34. Next, Wackenhut claims the circuit court erred when it refused its proffered jury instruction which, in part, purports to define “reasonable force.” The proffered jury instruction at issue was designated as DH-26, which states:
[Fortune] has alleged that Rozivito Hos-kins used a level of force which was unreasonable under the circumstances. However, the decision to use any amount of force must be judged from the perspective of the security officer or other citizen involved and not with the advantage of 20/20 hindsight. Any person may use that amount of force which is reasonably perceived under the circumstances to be necessary to eliminate a threat. In this instance, Rozivito Hos-kins alleges that he perceived a level of threat and that his response was consistent with a response of other reasonable security officers. Judge not with the advantage of hindsight, but from the position of an officer at that time under those same set of conditions.
¶ 35. Although Wackenhut’s argument may have merit, it failed to support its argument with any authority. “Arguments advanced on appeal must contain the contentions of the Appellant with respect to the issues presented and the reasons for those contentions with citations to the authority, statutes, and parts of the record relied on.” M.R.A.P. 28(a)(6). Failure to cite authority to support an argument renders an issue procedurally barred. Read v. S. Pine Elec. Power Ass’n, 515 So.2d 916, 921 (Miss.1987) (citations omitted). Accordingly, we will not consider this issue on appeal.
VIII. EVIDENCE OF FORTUNE’S PRIOR CONVICTIONS
¶ 36. Fortune filed a motion in limine to exclude evidence of his prior convictions, which include driving under the influence, numerous instances of public drunkenness, and at least one prior conviction for burglary of a business. Fortune argued that his prior convictions were inadmissible pursuant to Mississippi Rules of Evidence 402, 404(b), and 609(b). The circuit court *1095 granted Fortune’s motion in limine and prohibited the introduction of any evidence of Fortune’s prior convictions. During a proffer, Wackenhut submitted a “summary and the supporting documentation and records behind ... Fortune’s criminal history.” Wackenhut claims the circuit court erred when it prohibited evidence of Fortune’s prior convictions.
¶ 37. Wackenhut argues that Fortune’s criminal record is relevant to his employability since Fortune sought damages for future lost wages and loss of wage-earning capacity. Noting that Fortune’s last reported earnings were during 2001 — when he was required by court order to work for Stuart C. Irby Company, Inc. as restitution for burglary of the company — Wackenhut also argues that Fortune’s conviction for burglary is relevant to his credibility. Furthermore, Wackenhut claims Fortune’s criminal record of alcohol-related offenses is probative of his alcohol dependence and is, therefore, relevant to Fortune’s request for damages. According to Wackenhut, it was clearly prejudiced “by not being allowed full cross-examination on an element of damages which goes directly to assumptions utilized by Dr. Glover in her calculation of lost wages.”
¶ 38. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This is not a Rule 404(b) question. Wack-enhut did not seek to introduce evidence of Fortune’s criminal history for the purpose of proving Fortune’s character. Likewise, Wackenhut did not seek to prove that Fortune acted in conformity with his character. Moreover, Wackenhut did not seek to introduce evidence of Fortune’s criminal history for the purpose of one of the contemplated exceptions to Rule 404(b). Wackenhut sought to prove that Fortune had limited employment opportunities because of his criminal history.
¶ 39. Wackenhut was allowed to thoroughly cross-examine Fortune regarding his work history. However, Wackenhut made no proffer indicating that Fortune’s criminal record had or had not adversely impacted his ability to find work. It is true that Fortune’s criminal history could adversely impact his ability to obtain regular employment. In that sense, Fortune’s criminal history could tend to make it less probable that he would actually earn the future wages that Dr. Glover calculated. However,- Fortune testified that he had been able to obtain regular employment at Furniture Zone. Accordingly, Fortune’s criminal record does not render it impossible for Fortune to find work. It simply limits his opportunities to find work in that some employers may choose not to hire someone with prior convictions.
¶ 40. Due to the lack of a proffer on the subject, we cannot definitively rule on this issue. There simply is not sufficient information in the record. Accordingly, the admissibility of Fortune’s criminal record will be left to the sound discretion of the trial judge upon remand.
IX. EVIDENCE OF FORTUNE’S “HOMELESS” STATUS
¶ 41. Wackenhut claims the circuit court erred when it granted Fortune’s motion in limine to exclude any evidence of his being “homeless.” Wackenhut proffered Fortune’s application to the Mississippi Department of Human Service’s “Temporary Assistance for Needy Families” (TANF) program. Wackenhut notes that Fortune indicated he was “homeless” in that application. Wackenhut also notes *1096 Fortune’s testimony that he applied for benefits from the Mississippi Supplemental Nutrition Assistance Program. Wacken-hut reasons that because Fortune described himself as “homeless” in his TANF application, that status is relevant to Fortune’s claim for lost wages.
¶ 42. Wackenhut failed to cite authority to support its position. Accordingly, we will not consider this issue on appeal.
X. EVIDENCE OF COLLATERAL SOURCES OF TREATMENT
¶43. The circuit court granted Fortune’s motion in limine to exclude any evidence of collateral sources of medical treatment. According to Wackenhut, Fortune opened the door to cross-examination on his ability to pay for medical treatment when he testified that he did “not have the money to go get the right side of [his] body x-rayed.”
¶ 44. To paraphrase the exchange between Fortune and Wackenhut’s attorney, during cross-examination, Wackenhut’s attorney asked Fortune whether he had gone to a doctor for his arm during the prior year. Fortune responded that he did not have enough money to get the “right side of his body x-rayed.” Wackenhut’s attorney then asked Fortune whether he was testifying that the cost of medical treatment was preventing Fortune from actually seeking treatment. Fortune’s attorney objected. Wackenhut’s attorney argued that because Fortune testified he has not been able to afford to get treatment, Wackenhut should be allowed to address Fortune’s access to medical care.
¶ 45. During further discussions, the circuit court asked Wackenhut’s attorney for Mississippi authority that supported Wackenhut’s position. Wackenhut told the circuit court that it would have a case supporting its position when the trial resumed the following morning. The circuit court recessed for the day. When Wack-enhut’s attorney resumed cross-examination of Fortune the next morning, Wacken-hut’s attorney stated, “Thank you, Your Honor. I would just move on to a new question.” Wackenhut’s attorney did not address Fortune’s claim that he could not afford to get “the right side of [his] body x-rayed.”
¶ 46. Despite the fact that Wackenhut appears to have abandoned its cross-examination on the subject of Fortune’s access to medical treatment, this issue turns on Wackenhut’s failure to cite authority in support of its argument on appeal. Consequently, this issue is also procedurally barred.
¶ 47. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND IN THE RESULT.

. The knife was not entered into evidence. Other witnesses characterized the knife as a "fingernail file.”

. After Wackenhut had filed its appeal, Fortune moved to remand this case to the circuit court for a new trial. Fortune reasoned it is unnecessary for this Court to resolve Wacken-hut’s other claims because Fortune concedes that the circuit court erred when it refused Wackenhut’s proffered jury instruction on contributory negligence. The Mississippi Supreme Court subsequently entered an order finding that Fortune’s "motion to remand should be passed for consideration with the merits of the appeal.”

.Due to the tedious nature of referring to Wackenhut and Hoskins collectively, we refer to them simply as “Wackenhut.”