JAMES, J.,
dissenting:
¶ 33. I find that genuine issues of material fact are. present in this case, and that summary judgment should not have been granted. Therefore, I respectfully dissent.
¶34. Singley offered the expert testi: monies of Doug Head and Anne Stodola to support his claims. Head testified,that the REGENT-C [15]’s performance in Singley’s accident did not comport with the minimum performance requirements for the two tests, the 3-35 and the 3-11 test. Test 3-35 was performed on the REGENT-C; however, test 3-11 was not.[16] Head contended that it should have been performed. Head further testified that the SRT[17] was a safer alternative. However, Head based his opinion on the fact that the SRT had already passed the guidelines of the National Cooperative *720 Highway Research Program (NCHRP) set out in a special report known as the NCHRP 350. Head admitted that he did not perform any testing to examine the SRT’s performance.
¶35. Singley1 s other expert, Stodola, opined that the design of the REGEÑT-C had a basic mechanical failure that likely caused the REGENT-C to perform in the way that it did during the accident.However, Stodola refused to offer an opinion about the SRT being a safer design because she was not qualified to testify to that supposition.
¶ 36. On October 15, 2013, the trial court granted the Defendants’ motion for summary judgment. The trial court found that Head was generally qualified, but excluded his testimony because he thought it was unreliable. The trial court also found that Stodola was qualified, but her testimony was also excluded because the- trial court found that her opinion “bordered design theory,” an area in which she was not qualified to offer an opinion.
¶ 37. Singley argues that the trial court did not correctly apply the Daubert standard and improperly excluded both experts’ opinions in regard to the subject matter. Singly contends that the trial court essentially applied the single-factor general-acceptance test. Singley also argues that the trial court ruled on a disputed fact between Head and the Trinity Defendants’ expert by stating that Head’s testimony is unreliable because “he is the only person in the field that holds the opinion 3-11, versus or in addition to 3-35[,] should apply to. end terminals.” Sing-ley also states that the trial court failed to conduct any evaluation of Stodola’s opinion using Daubert criteria. Finally, Singley asserts that both Head and Stodola are qualified to testify to their respective opinions.
A. Mississippi Rule of Evidence 702 and Daubert
¶ 38. “The admission of expert witness testimony is within the discretion of the trial judge.” Wackenhut Corp. v. Fortune, 87 So.3d 1083, 1091 (¶ 28) (Miss.Ct.App.2012) (citing Kidd v. McRae’s Stores P’ship, 951 So.2d 622, 626 (¶ 17) (Miss.Ct.App.2007)). “We have also stated that “[e]ven if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party.” ” Id.
¶ 39. Mississippi Rule of Evidence 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 40. In Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court rejected the general-acceptance test. The Court stated that “the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Id. The Court further stated that “the trial judge must determine at the outset, pursuant to Rule 104(1), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.” Id. at 592-93, 113 S.Ct. 2786. Widespread acceptance in the field of study can also play an important role in a trial court’s *721 decision to admit expert testimony. Id. at 594, 118 S.Ct. 2786.
¶41. In Mississippi Transportation Commission v. McLemore, 868 So.2d 31 (Miss.2003), the Mississippi Supreme Court adopted the Daubert standard and rejected Frye.[18] The Court acknowledged that the application of Daubert is fact specific and “appropriately uses relevant factors to determine reliability.” Id. at 38 (¶ 18). The Court stated:
The Court in Daubert adopted a non-exhaustive, illustrative list of reliability factors for determining the admissibility of expert witness testimony. The focus of this analysis “must be solely on principles and methodology, not on the conclusions they generate.” These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique’s operation; and whether'the theory or technique enjoys general acceptance within a relevant scientific community. The applicability of these factors depends on the nature of the issue, the expert’s particular expertise, and the subject of the testimony. The Daubert Court emphasized that the reliability inquiry contemplated by Rule 702 “is a flexible one.”
Id. at 36-37 (¶ 13) (internal citations omitted).
B. Expert Testimony
¶ 42. Doug Head was one of Singlets experts who testified in several depositions over the course of litigation. He testified that REGENT-C was defective and unreasonably dangerous because it did not comply with the performance guidelines for Test Level 3 end terminals. Head endorsed the 3-11 length-of-need test. The trial court found that Head was generally qualified to testify about the REGENT-C’s design, NCHRP 350, and the subject accident sequence. The trial court further held that Head’s opinion concerning the applicability of the 3-11 test was flawed and. unreliable because he was the only person in his field who holds the opinion about the existence of a suitable alternative design.
¶43. The second expert, Stodola, was an expert in the fields of accident reconstruction and mechanical engineering. Stodola intended to testify to specific mechanical defects or failures of the REGENT-C that Singley- asserts proximately caused his injury. Stodola is a licensed engineer and trained accident reconstruc-tionist. Stodola testified that the weakened beam placed, next to -a stiffened section with increased mass created a point on the REGENT-C capable of “snagging” or “hooking” a vehicle. Stodola also testifies that if the truck had been redirected, as it should have been, Singly would not have been injured in the way he was hurt in this case. Stodola also testifies that it was the combination of the slotted sections of rail next to the second cable box and the transition point between the REGENT-C and the non-slotted steel' guardrail that caused Singley’s injuries.
¶ 44. The trial court agreed that Stodo-la is qualified as an expert witness. However, the court excluded Stodola’s testimony because it stated that the testimony bordered on design theory. As a result the trial court held that Stodola was not qualified to draw the conclusions she made in her depositions. Singley argues that Stodola was merely using her education and experience as a mechanical engineer *722 and accident reconstructionist to render an opinion in her field.
¶ 45. When a party offers expert testimony, he “must show that the expert has based his testimony on the methods and procedures of science, not merely his subjective beliefs or unsupported speculation.” Delta Reg’l Med. Ctr. v. Taylor, 112 So.3d 11, 25 (¶ 42) (Miss.Ct.App.2012) (citing Bailey Lumber & Supply Co. v. Robinson, 98 So.3d 986, 994-95 (¶23) (Miss.2012)). Further, the supreme court has stated that “an expert’s testimony is presumptively admissible when relevant and reliable.” Hubbard ex rel. Hubbard v. McDonald’s Corp., 41 So.3d 670, 675 (¶ 17) (Miss.2010) (citing McLemore, 863 So.2d at 36). The supreme court has held that when an expert’s opinion is attacked with credible evidence that his opinion is not accepted in the scientific community, the proponent of the expert testimony must provide a minimal defense of the opinion’s reliability. Hill v. Mills, 26 So.3d 322, 332-33 (¶41) (Miss.2010).
¶ 46. In response to the majority opinion, Head and Stodola were properly qualified as expert witnesses by the trial court, and their testimonies were improperly excluded. The majority opinion adopts the language of the trial court in using the words “safer” or “better” alternative design. The claimant must prove by a preponderance of the evidence that the product was designed in a defective manner. Miss.Code Ann. § ll-l-63(a). The statute requires Singley to show:
The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.
Miss.Code Ann. § 11 — 1—63(f)(ii). Head and Stodola’s testimonies satisfy the statutory requirements. The testimony of Head’s and Stodola showed that the automobile should have been redirected, and that the leg should not have been severed.
¶47. Head and Stodola’s testimonies raise genuine issues of material fact. The testimonies directly contradict the Trinity Defendants’ arguments. Singley has presented sufficient evidence to survive summary judgment. The issues of whether the SRT design was better than the REGENT-C and whether the REGENT-C was defective are questions of fact to be decided by the jury based on the testimony. The trial court erroneously excluded evidence that adversely affected the. substantial rights of the parties.
C. Evidence Concerning Factual Existence of Bolt at Post 2 During Test 3-35
¶48. Singley contends that the trial court’s order was an abuse of discretion. Singley also argues that the rebuttal or impeachment evidence offered was mistakenly referred to as bolt-two theory. Sing-ley further argues that the delay was caused by the Defendants’ failure to timely disclose the fact that BPI, EAS, and E Tech altered the originally proposed design of the REGENT-C. Singley asserts that, because of the existence of a bolt attaching the REGENT-C’s rail to Post 2 during the 3-35 test is impeachment evidence that is supported, he does not need to prove that the bolt caused his injuries.
¶ 49. “The admissibility of evidence is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules, of evidence, and it will not be found in error unless the trial court has abused its discretion.” Moss v. State, 977 *723 So.2d 1201, 1207 (¶ 4) (Miss.Ct.App.2007) (citing Harris v. State, 861 So.2d 1008, 1018 (¶ 41) (Miss.2003)). The appellate court will not reverse the admission or exclusion of evidence unless it “adversely affects a substantial. right.” Robinson Prop. Mgmt. Grp. v. Mitchell, 7 So.3d 240, 243 (¶ 9) (Miss.2009).
¶ 60. The trial court referred to Sing-ley’s “impeachment evidence” as a theory, and held that it would be unfairly prejudicial to allow Singley to allow a new theory shortly before trial. Singley submitted an affidavit from Head discussing the bolt-two issue after the Daubert and other disposi-tive motions were filed. The Court found that the information in Head’s affidavit was available by his deposition date.
¶ 61. In the . amended complaint, Sing-ley alleged, that “the REGENT-C guardrail deviated in a material1 way from the manufacturing specifications from otherwise identical units manufactured to the same manufacturing specifications.” Sing-ley argues that there was a flaw in the REGENT-C’s design that prevented it from preforming correctly. Head’s affidavit opined that the altered REGENT-C was not submitted to the 3-36 test, and has not been demonstrated to pass the minimum performance guidelines set forth in the NCHRP 350. Head’s affidavit also stated how the REGENT-C being attached at Post '2 may have affected its performance during the collision.
. ¶52. Singley has previously alleged that a design flaw in the ■ REGENT-C existed. The affidavit Head submitted to the court appears to support that theory. The Mississippi Supreme. Court has held that parties have a right to their , theory of the case. Burnwatt v. Ear, Nose & Throat Consultants of N. Miss., 47 So.3d 109, 118 (¶ 36) (Miss.2010).
¶ 63. The majority opinion states that the trial court did,not abuse its discretion in excluding Singley’s impeachment evidence regarding the existence of a bolt at Post 2 during the 3-35 test. This'factual dispute was supported and did not depend on -the witnesses. The existence of a bolt attached to the REGENT-C’s rail at Post 2 during Test 3-35 was supported .by the tangible evidence of photographs and video recordings. These facts were also known by Trinity, and there was no new theory and no new discovery needed.
¶ 54. Whether there was a design flaw in the REGENT-C that impaired its ability to function as it should is a disputed fact.^Therefore, summary judgment is not appropriate.
D. Summary Judgment
¶55. “[Wjhere disputed facts exist or where different interpretations or inferences can be drawn from undisputed facts, summary judgment is . inappropriate.” Morgan v. Citizens Bank, 912 So.2d 1133, 1135 (¶ 9) (Miss.Ct.App.2005) (citing Johnson v. City of Cleveland, 846 So.2d 1031, 1036 (¶ 14) (Miss.2003)).
¶ 56. Singley argues that the trial court erred in viewing the evidence in the light most favorable to the Defendants on several different issues, including the intent, and meaning of the facts and opinions of the Federal Highway Administration (FHWA) expressed in the REGENT-C’s acceptance letter, and Singley’s claims in regard to the MPLA, causation, a.feasible alternative design to the REGENT-C, strict liability, negligence, intentional misrepresentation, and punitive damages.
¶ 57. As previously mentioned, when reviewing the grant or denial of a summary-judgment motion,, “the evidentiary matters are viewed in the light most favorable to the nonmoving party.” Matthews v. Horseshoe Casino, 919 So.2d 278, 280 (¶ 5) (Miss.Ct.App.2005). “[I]f after exam *724 ining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed.” Id. “The opponent to summary judgment carries a burden of rebuttal, one which arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists.” Miller v. Myers, 38 So.3d 648, 652 (¶ 13) (Miss.Ct.App.2010). The Supreme Court of Mississippi has stated that “[i]f there is doubt as to whether a fact issue exists, it should be resolved in favor of the non-moving party., That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine. issue of material fact exists.” McClinton v. Delta Pride Catfish, Inc., 792 So.2d 968, 972-73 (¶ 7) (Miss.2001).
¶ 58. It should also be noted that in the trial court’s order several disputed facts are discussed. The trial court stated that “[t]he physical factors such as angle, speed and exact point of impact are in dispute although all experts agree he impacted the REGENT-C causing part of the guardrail, not the REGENT-C[,j to enter the passenger/driver compartment of his vehicle.” The order also stated:
The FHWA acceptance letter states:
Since the pickup truck came to a stop straddling the rail approximately 45 m (approximately 150 feet) from the terminal, this is the minimum length of rail that should be installed when the barrier is used along á high speed roadway to shield a bridge parapet or vertical rigid object located directly behind the guardrail.
The judge further states in his order: “The parties dispute whether or not this caveat was complied with and whether or not the length of the REGENT-C should be counted or included in the 150 feet.” The trial court noted that Head contended that “150 feet of guardrail should have been installed in addition to the REGENT-C and state[d] that if it had been, all other things remaining constant, plaintiff would have hit standard 3-11 tested guardrail and not the end terminal, thus avoiding the particular injury.” The court further noted that the Defendants argued that Head was not “qualified to give his opinion and then argue that the Court should look at the documents the FHWA would have relied upon in issuing the acceptance letter[,] which clearly show the REGENT-C was included within the approximate 150 feet requirement and was required based on the 3-11 test results, not 3-35.”
¶ 59. Also, the trial court made a determination on the merits about issues that should have been left within the discretion of a jury. The jury is the ultimate factfin-der and should have been able to determine the facts and credibility of the witnesses. Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001). However, in this case, the trial court judge decided the case on the merits when genuine issues of material fact existed.
¶ 60. The majority opinion states that summary judgment was proper in favor of Trinity. The, Singleys have established a prima facie case, and there is no reason to exclude the expert testimony of Head and Stodoía after they have been qualified as experts. In addition, the Singleys have promoted their claims by: (1) the feasible design alternative is not merely conceptual or theoretical in nature; (2) the feasible design alternative has been reduced to a scale drawing; (3) the feasible design alternative illustrates certain dimensions and' safety characteristics; 'and (4) the scale drawing shows to a reasonable probability that it would have prevented the harm without impairing the utility, usefulness, practicability, or desirability of the product to users or' consumers, as is re *725 quired by Mississippi Code Annotated section ll-l-63(f)(ii). Singley has also provided photos of the REGENT-C that the product failed to function as expected.
¶ 61. Singley raises several issues, all of which are in direct conflict with the Trinity Defendants’ position. Singley has provided sufficient evidence through expert testimony and other discovery to show that genuine issues of material fact do exist in this case. However, in the final judgment, the trial court did not strike the expert testimony, but it found that the experts’ depositions and affidavits were insufficient to withstand summary judgment. Also, the court granted the motion to strike the bolt-two theory and also granted summary judgment.
¶ 62. The majority opinion addresses Singley’s remaining claims that were not addressed by the trial court, and I decline to address these issues on appeal. These issues should be addressed by the trial court on remand.
¶ 63. I find that the trial court abused its discretion and erroneously excluded evidence that has adversely affected the substantial rights of the parties. Summary judgment is not proper because genuine issues of material fact exist, and the case should be reversed and remanded.

. The REGENT-C guardrail end terminal, as installed at the accident site, incorporated two steel cables intended to provide strength and redirective capabilities to the end terminal in the event of a side impact.

. The trial court found that the case involves three main issues: (1) Test 3-11 versus 3-35; (2) the “bolt two” theory; and (3) the length caveat in the FHWA acceptance letter, which I address in this opinion.

.SRT is an abbreviation for slotted rail terminal, which was designed and manufactured by Trinity.

. Frye v. United States, 293 F. 1013 (D.C.Cir.1923).